174 N.J. Super. 363 (1980)
416 A.2d 922
LOVELLA LIND AND EDWARD O. LIND, JR., INDIVIDUALLY AND AS GUARDIANS FOR EDWARD O. LIND, III, A MINOR, PLAINTIFFS,
v.
INSURANCE COMPANY OF NORTH AMERICA, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided May 1, 1980.
*364 Richard Press, for plaintiffs (Valore, McAllister, Aron & Westmoreland, attorneys).
John Aleli, for defendants (Lloyd, Megargee, Steedle, Youngblood & Franklin, attorneys).
GIBSON, J.S.C.
This is an action for personal injury protection (PIP) benefits. Cross-motions for summary judgment have been filed which call into question the effect of N.J.S.A. 39:6A-13.1(a), the limitations provision of the New Jersey "No-Fault Law" (Automobile Reparation Reform Act), N.J.S.A. 39:6A-1 et seq. The material facts are not in dispute and the matter is ripe for disposition by the court. R. 4:46-2.
On October 12, 1974 the minor plaintiff, Edward O. Lind, III, was struck while walking across a street in Margate, N.J. He sustained a blow-out fracture of the facial bones surrounding his right eye and came under the care of Dr. R.S. Slacum. At that time his father, also a plaintiff here, was the owner of an automobile which was insured through defendant Insurance Company of North America. Included in the policy were compulsory PIP benefits of which the minor plaintiff was a beneficiary. Following notice of the accident and the resultant injuries, defendant paid all related medical bills up to February 25, *365 1975. Although it was anticipated at the time that future surgery would be needed, Dr. Slacum recommended that it be deferred because of the age of the child (seven). Active treatment was therefore discontinued until October 1978, when follow-up exams were conducted. The bills were submitted to the carrier but on November 30, 1978 payment was refused based on the lapse of more than two years since the last treatment. The within suit was instituted two months later.
The primary question raised by these facts is whether N.J.S.A. 39:6A-13.1(a) should be read to bar a claim for medical benefits when the injury which forms the basis of the claim is one which necessarily involves a gap in treatment and when that gap brings the expense involved outside the four-year period from the date of the accident and more than two years from the last payment of benefits. Secondly, is the answer to the above question any different when the claimant is a minor? It should be noted that defendant admits that the expenses are causally connected to the accident and also that it was on notice of the need for future treatment during the period of voluntary payment.[1] There are no reported cases which resolve these issues.
N.J.S.A. 39:6A-13.1(a) reads as follows:
Every action for the payment of benefits set forth in sections 4 and 10 of this act, except an action by a decedent's estate, shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits.
Although the within action was instituted within two years of the incurring of the expense, it was clearly outside the four-year period and more than two years from the last payment. In Andrito v. Allstate Ins. Co., 161 N.J. Super. 409 (Cty.D.Ct. 1978), it was held that an expense which was incurred more than two *366 years from the last voluntary payment was not barred so long as it came within four years of the accident. Here, of course, the expense was beyond that four-year period. In dictum, the court also noted that the final clause of N.J.S.A. 39:6A-13.1(a) provided an exception to the four-year limitation and authorized claims for benefits beyond that period "as long as the suit is brought within two years of the last payment." Id. at 414. The same result was reached in the recently decided Appellate Division decision of Bell v. Western Employer's Ins. Co., 173 N.J. Super. 60 (App.Div. 1980).
The only other reported cases to date dealing with this portion of the No Fault Act are Henze v. Motor Club of America, 162 N.J. Super. 521 (Cty.D.Ct. 1978), and Danilla v. Leatherby Ins. Co., 168 N.J. Super. 515 (App.Div. 1979). In Henze the plaintiff waited 3 1/2 years from the incurring of an expense before filing suit, and the court ruled that the claim was barred. Although within four years from the accident, clearly more than two years had elapsed since the incurring of the expense. As indicated by the first clause of N.J.S.A. 39:6A-13.1(a), the two-year four-year alternative contains the proviso "whichever is earlier." In Danilla the court had occasion to interpret the language "incurring of an expense." It held that the Legislature intended this to refer to the first such expense rather than each expense incurred. The claimants there had argued that the two-year limitation in the first clause of the statute commenced only after the incurring of each expense that was related to the accident, regardless of the date of the accident or when the expense was incurred. Although acknowledging that the language admits of two interpretations, the court nevertheless rejected that view.
A later review of the above decision held that it was implicit that the Danilla court dealt with a situation where there had been no prior payment of benefits and that the result should be different where the prior expenses had been voluntarily paid. Bell v. Western Employer's Ins. Co., supra, 173 N.J. Super. at 64.
Plaintiff points out that the legislative intent of the "No Fault Law" was to provide lifelong medical expense benefits to *367 those needing continuing treatment, Iavicoli, No Fault and Comparative Negligence in New Jersey (1973), § 29, and that in that sense there is no time limitation as to the payment of PIP benefits. It is argued, therefore, that the two or four-year limitation should apply only when there has been a dispute as to coverage. Since there was no dispute here until the denial of the October 1978 expense, this would mean that the statute would not begin to run until then. Although this argument has appeal, it is not consistent with a fair reading of the statute. N.J.S.A. 39:6A-13.1 makes it clear that where payment of benefits has occurred and over four years have elapsed since the date of the accident, suit must be instituted within two years of the date of the last payment. Iavicoli, supra at 77; Bell v. Western Employer's Ins. Co., supra, 173 N.J. Super. at 65. Nowhere does the statute speak in terms of the denial of benefits.
Plaintiff next suggests that where benefits have been paid and causally related medical expenses are incurred more than two years after the last payment, then the preceding portion of N.J.S.A. 39:6A-13.1(a) should come into play  that is, the requirement that an action be instituted within two years from the incurring of an expense. This argument, however, overlooks the conditional language of that clause, "or not later than 4 years after the accident whichever is earlier...."
Finally, plaintiff argues that regardless of how one reads the statute this action should survive because of the minor status of plaintiff. This argument contemplates the application of N.J.S.A. 2A:14-21 to the No Fault Law.
The No Fault Law admittedly makes no provision for minors. The initial question to be asked therefore is whether this omission was intentional. Clearly, if the statute contained no limitation provision at all, one could easily suggest that the general statute of limitation pertaining to personal injury actions would apply. It has been pointed out that this indeed was the view held by the legislature when the No Fault Law was first enacted. See Iavicoli, supra at 79; Danilla v. Leatherby Ins. Co., supra 168 N.J. Super. at 519. The law was subsequently amended to include the limitation provision in question. Iavicoli, *368 supra. Having thus chosen to build in its own limitation provision, it is difficult under the normal rules of statutory construction to conclude that the Legislature did not intend it to be all-inclusive. See Uscienski v. National Sugar Refining Co., 19 N.J. Misc. 240, 242, 18 A.2d 611 (Cty.Ct. 1941).
Despite the conclusions reached here it is nevertheless difficult to believe that the Legislature intended to bar a claim such as this. The expense is admittedly related to a compensable accident. Future treatment was clearly contemplated by the parties. One must question what statutory goals[2] would be served by barring this claim, particularly in view of liberal construction mandated by the No Fault Act, N.J.S.A. 39:6A-16. Although in a different context our Supreme Court recently had occasion to examine the policy considerations underlying statutes of limitations. Galligan v. Westfield Centre Service, Inc., 82 N.J. 188 (1980). These considerations include a party's legitimate interest in repose and the security and stability in human affairs which it brings. Secondly, such statutes reflect the increasing difficulty that delay brings to the ability of one to defend an action. "Another purpose of limitation periods is `to spare the courts from litigation of stale claims.'" (Citations omitted). Id. at 192, 412A.2d at 124.[3] Having outlined these considerations, the court went on to point out the danger of a mechanical application of limitation statutes:
Unswerving, "mechanistic" application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing these legislative purposes.... On numerous occasions we have found "such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more *369 equitable and countervailing considerations of individual justice." ... A "just accommodation" of individual justice and public policy requires that "in each case the equitable claims of opposing parties must be identified, evaluated and weighed." .. . Whenever dismissal would not further the Legislature's objectives in prescribing the limitation, the plaintiff should be given an opportunity to assert his claim. [Citations omitted]. [Galligan v. Westfield Centre Service, Inc., supra at 192-193.]
In applying these principles to the case at bar, an allowance of the within claim would do violence to neither the purposes underlying the No Fault Act nor those identified with statutes of limitations generally. This is not a situation where the plaintiff "has slept on his rights." Cf. Kaczmarek v. New Jersey Turnpike Auth., 77 N.J. 329, 341 (1978). Since the company recognized its obligation under the policy from the outset, there was no reason to suspect that its position would change when presented with future expenses admittedly related to the accident. When in fact it took a contrary position, suit was quickly instituted. Accordingly, defendant cannot suggest that this is a stale claim or that it has been prejudiced. Indeed, neither claim has been made. Finally, this is not a case where the carrier should have legitimately been entitled to repose. The injuries were of such a nature that future treatment was contemplated and reasonably necessary. To shield it from its obligation to compensate plaintiffs here would constitute a windfall and would be inconsistent with the "utmost good faith" required by insurance companies. See Bowler v. Fidelity & Cas. Co. of N.Y., 53 N.J. 313, 327 (1969), where the court held the defendant carrier to be estopped from pleading the statute of limitations where it denied payment for benefits clearly due.
This court does not reach these conclusions lightly. Recognition, naturally, must be given to the primary role of the Legislature in correcting inequities that may exist in the statutes it creates. Matowan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 298 (1968). Nevertheless, such recognition should not serve to preclude a result which would otherwise fulfill the clearly defined goals of this statute. N.J.S.A. 39:6A-1 et seq.; Rybeck v. Rybeck, supra, 150 N.J. Super. at 492. Nor should this legislation be interpreted to a point beyond that which could be *370 supported constitutionally. In re Loch Arbour, 25 N.J. 258, 264-265 (1957).[4] It is the opinion of this court, therefore, that N.J.S.A. 39:6A-13.1 should not be applied as a bar to a claim in this setting. Having so concluded, there is no need to determine whether the result would be different were there no minor involved.
Plaintiffs' motion is thereby granted. Defendant's is denied.
NOTES
[1] Although this fact is deemed to be admitted for the purposes of this motion, it is not clear that there was actual notice that the need for future medical was definite. The report submitted to INA by the treating physician indicated that future surgery "may" be needed.
[2] As has been pointed out, there are four policy bases for the No Fault Act: "(1) increased reparation benefits (for those previously barred by fault tests); (2) reduction in the cost of auto insurance; (3) increased availability of necessary coverage, and (4) increased judicial economy." Rybeck v. Rybeck, 141 N.J. Super. 481, 492 (Law Div. 1976); app. dism. on other grounds 150 N.J. Super. 151 (App.Div. 1977).
[3] Like considerations were acknowledged by the courts when dealing with the limitations provisions of the No Fault Act. Danilla, supra 168 N.J. Super. at 518; Bell, supra, 173 N.J. Super. at 64.
[4] In evaluating the considerations raised by the within motions, one may legitimately question the potential constitutional issues raised by a result which would deprive a class of claimants from benefits when their injuries necessarily involved a gap in treatment of more than two years. Would such a result, for example, be reasonably related to any legitimate legislative goal? Having concluded that this statute should not be so read, however, these issues need not be dealt with further.