ALECIA M. ZUPO, PLAINTIFF-RESPONDENT, v. CNA
INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued October 23, 1984—Decided November 27, 1984.

*Thaddeus J. Hubert, III* argued the cause for appellant (*Hoagland, Longo, Oropollo & Moran,* attorneys; *Bartholomew A. Longo,* and *Andrew J. Carlowicz,* on the briefs).

*Albert W. Seaman* argued the cause for respondent (*Albert W. Seaman,* attorney; *John M. Dudas,* on the brief).

PER CURIAM

On certification granted, 97 *N.J.* 584 (1984), we have reviewed the Appellate Division's holding that "when a carrier has made [personal injury protection benefits] payments in connection with a compensable injury and is chargeable with knowledge at the time of its last payment that the injury will probably require future treatment, then the 'two-year after

payment' provision of *N.J.S.A.* 39:6A–13.1 will not bar an action brought within a reasonable time after rejection of a prompt claim for payment of additional medical expenses for such treatment." *Zupo v. CNA Ins. Co.*, 193 *N.J.Super.* 374, 384 (1984). With the "housekeeping" modification noted *infra*, we affirm, substantially for the reasons expressed in Judge Pressler's comprehensive opinion below.

■ The modification referred to is required because the Appellate Division remanded the cause in light of the following circumstances:

> Because of the state of the record here, we are unable to determine whether CNA was chargeable at the time of its last payment with knowledge that plaintiff's condition would likely require future treatment. We are satisfied from its own concession that plaintiff's instant claim is causally related to the original accident. It also appears when the carrier made its last payment it knew that plaintiff suffered from a causally-related osteomyelitis. *There is no proof in the record, however, that as a medical fact osteomyelitis is so likely to recur after a protracted period of apparent cure as to render its recurrence after five years a probable event.* If there were such proof, the no fault carrier would be chargeable with knowledge of that fact and its responsibility would extend to payment of this claim. If the probability of such recurrence is not a medical fact, then it would not be responsible for this claim. We therefore remand to the trial court to determine in an evidential hearing whether, as a matter of medical probability, CNA is chargeable with anticipating this claim when it made its last payment. [193 *N.J.Super.* at 384 (emphasis added).]

We were informed at oral argument that the trial court has already held the hearing on remand, resulting in a determination favorable to plaintiff; hence, there is no need for any further proceedings.

Because the appeal focuses on *N.J.S.A.* 39:6A–13.1, a specie of statute of limitations built into the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–11 to –16 (No Fault Law), we add only the following thought to the opinion below. In *Ochs v. Federal Ins. Co.*, 90 *N.J.* 108 (1982), we referred to the purposes of a statute of limitations:

> A statute of limitations has two purposes. The first is to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims. * " * The second function is to "penalize dilatoriness and serve as a measure of repose." [*Id.* 90 *N.J.* at 112 (citations omitted).]

Allowing plaintiff's claim in the circumstances before us poses no threat to either of the above-stated salutary purposes. The carrier recognized its obligation under the policy when it made payment for medical expenses incurred from the date of the accident in July 1973 to the termination of active treatment in May 1975. When it made its last payment, it was chargeable with knowledge (as has now been established) that the condition would probably recur, and hence that there would probably be future medical expenses. When in fact those expenses were incurred, plaintiff sought reimbursement and, upon the carrier's refusal to pay, instituted suit within fifteen months of the onset of the recurrence. Consequently, all the information about the recurrence was "fresh," and the carrier's ability to attack the fact of the recurrence, the nature of the disease, or the causal relationship between the recurrence and the original accident was in no way compromised. Equally clearly, plaintiff was not dilatory in asserting her claim, so that interests of repose are not implicated.

The principle that we adopt today embraces a severely limited class of causally-related medical conditions, namely, those whose insidious nature is such that their recurrence after an extended period of apparent cure is probable. As the Appellate Division observed, the No Fault Law does not address that kind of condition. For the reasons stated by the court below, we believe that allowance of claims such as this plaintiff's comports with the intent of the remedial legislation.

Judgment affirmed as modified. The cause is remanded to the trial court for entry there of judgment for plaintiff.

*For affirmance as modified*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK and O'HERN—5.

*For reversal*—Justices SCHREIBER and GARIBALDI—2.

GARIBALDI, J., dissenting.

Alecia M. Zupo, a pedestrian, was struck by a car in July 1973. She sustained serious injuries to her left ankle and foot

and was under active treatment for these injuries until May 1975. It appears that during this period of time she developed an osteomyelitic infection at the injury site, which required care. CNA Insurance Company, the liability carrier for the owner of the car that struck Ms. Zupo, paid all of her medical expenses theretofore incurred, pursuant to the personal injury protection (PIP) provision of its policy. The last payment of PIP benefits was made to Ms. Zupo in May 1975. In November 1980, she suffered a recurrence of osteomyelitis at the injury site. She was hospitalized and, in 1981, sent medical bills for this treatment to CNA, who refused to reimburse her, relying upon the limitations bar of *N.J.S.A.* 39:6A–13.1(a).

The limitations provision of the New Jersey Automobile Reparation Reform Act (No Fault Law), *N.J.S.A.* 39:6A–1 to –35, provides as follows:

> a. Every action for the payment of benefits set forth in sections 4 and 10 of this act, except an action by a decedent's estate, shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, *provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits.* [*N.J. S.A.* 39:6A–13.1(a) (emphasis added)]

Under the plain and unambiguous language of the statute, Ms. Zupo's cause of action is barred. The last payment of PIP benefits was made to Ms. Zupo in 1975 and six years later, in 1981, Ms. Zupo sought reimbursement for the medical expenses she incurred in 1980–81.

Notwithstanding the clear language of the statute, the Appellate Division, whose opinion was relied upon by the majority, held that the two-year-after-payment bar need not be literally applied. It held:

> We are satisfied, however, that the Legislature did not intend so anomalous a result and that its failure to have expressly provided for a situation such as this must be regarded as an oversight subject to the court's remedial interpretation in order to effectuate actual legislative intent. [*Zupo v. CNA Insurance Co.*, 193 *N.J.Super.* 374, 381 (App.Div.1984).]

It is the duty of this Court to interpret statutes, not rewrite them. As Justice Cardozo stated in his classic treatise, *The Nature of the Judicial Process:*

> In countless litigations, the law is so clear that judges have no discretion. They have the right to legislate within gaps, but often there are no gaps. We shall have a false view of the landscape if we look at the waste spaces only, and refuse to see the acres already sown and fruitful. I think the difficulty has its origin in the failure to distinguish between right and power, between the command embodied in a judgment and the jural principle to which the obedience of the judge is due. Judges have, of course, the power, though not the right, to ignore the mandate of a statute, and render judgment in despite of it. They have the power, though not the right, to travel beyond the walls of the interstices, the bounds set to judicial innovation by precedent and custom. None the less, by that abuse of power, they violate the law. ` * * (Seventeenth Printing, Yale University Press, September, 1957 at p. 129). [*State v. Fearick*, 69 *N.J.* 32, 37–38 (1976).]

Viewed as above indicated, I believe that there exist no gaps or legislative oversight in the statute. Therefore, there is no room for judicial legislation when interpreting *N.J.S.A.* 39:6A–13.1.

Moreover, there are few areas in which the legislature has been more active than in no fault insurance. The statute as enacted is the result of much discussion and compromise among various interest groups. I believe that it is eminently logical that the legislature intended to impose a strict two-year-after-payment bar. The legislature is interested in limiting the cost of automobile insurance to the public. It may well have concluded that without such a bar, numerous claims would be filed years after an accident and such open-ended claims would increase the cost of insurance to the public.

In view of the clear and unambiguous language of the statute, the continued interest of the legislature in this area, and the rational reasons for the legislature's mandate, I disagree with the majority that the plain language of *N.J.S.A.* 39:6A–13.1(a) should be ignored. I would reverse the Appellate Division's opinion.

Justice Schreiber joins in this dissent.