HELEN RAHNEFELD, PLAINTIFF, AND JEFFREY M. RAHNE-
FELD, PLAINTIFF-RESPONDENT, v. SECURITY INSURANCE
COMPANY OF HARTFORD, A CORPORATION AUTHORIZED
TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPEL-
LANT.

Argued February 2, 1988—Decided July 18, 1989.

*Charles F. Harris* argued the cause for appellant (*Harris & Zielinski,* attorneys).

*H. Scott Hart* argued the cause for respondent.

PER CURIAM.

In *Zupo v. CNA Insurance Co.,* 98 *N.J.* 30 (1984), we adopted the principle that when an automobile liability-insurance carrier has made payments of personal injury protection (PIP) benefits

in connection with a compensable injury and is chargeable with knowledge at the time of its last payment that the injury will probably require additional treatment in the future, then the "two years after payment" provision of *N.J.S.A.* 39:6A–13.1 will not bar an action brought within a reasonable time after rejection of a prompt claim for payment of additional medical expenses for such treatment. *Id.* at 31–32. A restriction on the foregoing principle was that it embraced only "a severely limited class of causally-related medical conditions, namely, those whose insidious nature is such that their recurrence after an extended period of apparent cure is probable." *Id.* at 33.

The issue on this appeal, here on certification granted, 108 *N.J.* 586 (1987), is whether the trial court, affirmed by the Appellate Division in an unreported opinion, correctly held that the circumstances of this case brought the PIP claim within the holding of *Zupo*, thereby rendering it "timely" despite the "two years after payment" bar. We affirm.

I

In September 1974, plaintiff Jeffrey Rahnefeld, then eighteen, was severely injured when, as a pedestrian, he was struck by an automobile and sustained injuries that included fractures of both legs. Because he was a resident member of his parents' household, Jeffrey was an additional insured under his father's automobile liability-insurance policy with defendant, Security Insurance Company of Hartford (Security), and as such was entitled to PIP benefits. Security paid the medical expenses for Jeffrey's two-months stay in a hospital and for treatment by physicians, including Dr. Ciccone, an orthopedic surgeon, who treated Jeffrey on nine occasions after the hospitalization. During the ninth such visit, on November 9, 1977, Dr. Ciccone made a notation of Jeffrey's condition: "[g]ood gait, no return of sensation or dorsiflexion of the left foot, the foot was cold, the left knee unstable." According to Jeffrey's

mother, plaintiff Helen Rahnefeld (henceforth reference in this opinion to "plaintiff" indicates plaintiff Jeffrey), Dr. Ciccone told Jeffrey that "there was nothing more he could do for him right now, but that in the future he would need the brace or this corrective shoe and * * * he did not recommend anything in the way of surgery, additional." Dr. Ciccone advised Jeffrey to continue exercising and to come back one year later.

It was not until more than five years thereafter, on April 1, 1984, that Jeffrey returned to Dr. Ciccone. He complained that the pain in his right leg had "slowly worsened," that it "[s]tarted in one area" and the area "increased in size." He related his discomfort to "over walking or exercising." Not satisfied with Dr. Ciccone's examination, Jeffrey consulted Dr. Marvin P. Rosenberg, an orthopedic specialist, on June 21, 1984. Dr. Rosenberg took x-rays and performed an examination, on the basis of which he concluded, according to his certification, that Jeffrey had sustained "serious, permanent injuries which included comminuted fractures involving the articulating surfaces of the knee joints; serious compression of the popliteal artery and branches; severe trauma to the left tibial nerve; and other injuries * * *." In Dr. Rosenberg's opinion, given "with reasonable medical certainty," Jeffrey's injuries, particularly those involving the tibial plateau within the knee, were such that deterioration would follow and "future treatment would of necessity be required."

When the bills for the examinations by Dr. Ciccone and Dr. Rosenberg were submitted for payment, Security rejected them inasmuch as the charges had been incurred more than two years after the last previous treatment or payment. Security relied on the statute-of-limitations provision of the New Jersey Reparation Reform Act (No Fault Act), found in 39:6A–13.1(a), which reads:

> Every action for the payment of benefits set forth in sections 4 and 10 of this act, except an action by a decedent's estate, shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the

loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, *provided, however, that if benefits have been paid before then[,] an action for further benefits may be commenced not later than 2 years after the last payment of benefits.*
[Footnote statutory reference omitted; emphasis added.]

This action for a declaration of Security's liability for outstanding medical bills and expenses followed. Defendant moved for summary judgment, but the hearing on the motion was adjourned to afford Security the opportunity to rebut the information in Dr. Rosenberg's certification, summarized above, particularly in respect of the need for future medical treatment. Thereafter the trial court conducted what it denominated an "abbreviated trial," in which it considered the deposition testimony of Jeffrey Rahnefeld and his mother, the deposition testimony of Dr. Ciccone, the certification of Dr. Rosenberg, and the report of Dr. Ira A. Roschelle, an orthopedic surgeon, who examined Jeffrey at the behest of defense counsel and who concluded that Jeffrey had "significant permanent partial impairment of both knees" that "[might] very well, in the future, require [him] to seek a high tibial osteotomy" or "a total knee replacement." The trial court concluded that the circumstances came within the *Zupo* exception to the "two years after payment" statute of limitations of the No Fault Act, and therefore awarded judgment for plaintiffs. The Appellate Division affirmed.

## II

In *Zupo, supra,* 98 *N.J.* 30, this Court affirmed, with a "housekeeping" modification, the judgment of the Appellate Division, which had reversed a grant of summary judgment in favor of a PIP carrier. We did so substantially on the basis of Judge Pressler's opinion, reported at 193 *N.J.Super.* 374 (1984), which in the course of carefully parsing the No Fault Act pointed out that (1) when an automobile liability insurer acknowledges its responsibility for PIP benefits by the "unambiguous act" of making medical payments, it also necessarily assumes the responsibility to continue to make future payments

for an indefinite period of time "provided only that the claimed medical expenses are related to and are necessitated by the original occurrence," *id.*, at 381; (2) hence, if an insured suffers from a causally-related medical problem requiring continuing treatment, his or her right to payment from the PIP carrier is "vouchsafed for the indefinite future," *ibid;* (3) the same right to payment is, by express statutory provision in *N.J.S.A.* 39:6A–13.1, "vouchsafed for the indefinite future so long as [the insured] has a continuing need for treatment at intervals no greater than two years," *ibid;* and (4) therefore, the situation *directly* within the contemplation of the statute is a medical condition that is "either chronic or will predictably require treatment at no greater than two-year intervals." *Ibid.* What the statute does not address, Judge Pressler observed, is "a medical condition whose inherent nature is periodic recurrence at indefinite and unpredictable intervals which may be as protracted as the five-year interval" in *Zupo. Ibid.* (The medical condition in that case was osteomyelitis, found by the trial court on remand after the Appellate Division's decision and before the case reached us, see 98 *N.J.* at 32, to be "so likely to recur after a protracted period of apparent cure as to render its recurrence after five years a probable event." 193 *N.J.Super.* at 384.)

The conclusion reached by the Appellate Division in *Zupo,* accepted by this Court, was that it

would contravene logic, common sense and the basic purpose of reparation underlying the No Fault Law if we were to assume a legislative intention to condition an insured's right to future medical benefits on the fortuity of the timing of the recurrence of a compensable illness which, from its onset and certainly at the time the carrier made its last payment, was known by it to be of a recurrent nature. We are convinced that it was not the legislative intent to confer upon a carrier immunity from its payment obligation simply by reason of that fortuity. We are therefore persuaded that if the original medical condition for which the PIP carrier has assumed a payment obligation is by its nature subject to the probability of recurrence or to the probability of the need for future treatment, the carrier is chargeable at the outset with knowledge of these inherent probabilities. It is also, therefore, fairly chargeable with anticipating from the outset the likelihood of being called upon to make treatment payments in the future. [193 *N.J.Super.* at 381–82.]

In reaching that conclusion the Appellate Division in *Zupo* adopted the reasoning and "singularly apt" rationale of Judge Gibson in *Lind v. Insurance Company of North America*, 174 *N.J.Super.* 363 (Law Div.1980), *aff'd* o.b., 193 *N.J.Super.* 303 (App.Div.1983). See *Zupo, supra*, 193 *N.J.Super.* at 383. In *Lind* the infant plaintiff, age seven, suffered facial fractures in a 1974 automobile accident and underwent active treatment from the time of the injury until 1975. The PIP carrier paid the medical expenses for that course of treatment. Although future surgery was contemplated at the time active treatment was terminated in 1975, the surgery was deferred until 1978 because of the child's age. The carrier refused to pay the surgical bills because those expenses had been incurred more than two years after the last payment. Judge Gibson, rejecting the statute-of-limitations defense, declared it unlikely that the legislature intended to foreclose a claim that arose from an admittedly compensable accident when the parties understood, early on, that there would be a need for future treatment. 174 *N.J.Super.* at 368. Moreover, allowing recovery under the circumstances would disserve none of the policies underlying statutes of limitations:

> This is not a situation where the plaintiff has "slept on his rights." Since the company recognized its obligation under the policy from the outset, there was no reason to suspect that its position would change when presented with future expenses admittedly related to the accident. When in fact it took a contrary position, suit was quickly instituted. Accordingly, defendant cannot suggest that this is a stale claim or that it has been prejudiced. Indeed, neither claim has been made. Finally, this is not a case where the carrier should have legitimately been entitled to repose. *The injuries were of such a nature that future treatment was contemplated and reasonably necessary.* To shield it from its obligation to compensate plaintiffs here would constitute a windfall and would be inconsistent with the "utmost good faith" required by insurance companies. [*Id.* at 369 (citations omitted) (emphasis added).]

The Appellate Division in *Zupo* found support for Judge Gibson's view of the legislature's intent in the fact that "despite its recent intensive attention to the No Fault Law" after the *Lind* decision, the legislature left *N.J.S.A.* 39:6A–13.1 intact. 193 *N.J.Super.* at 383–84.

## III

As we have pointed out, when this Court affirmed the Appellate Division in *Zupo*, it did so "substantially for the reasons expressed in Judge Pressler's comprehensive opinion below," 98 *N.J.* at 32, but added this observation:

The principle that we adopt today embraces a severely limited class of causally-related medical conditions, namely, those whose insidious nature is such that their recurrence after an extended period of apparent cure is probable. [*Id.* at 33.]

At the time, we believed our short addendum would aid courts, counsel, and litigants in understanding the reach of the "two years after payment" provision in the statute. If this case is typical, it is apparent that, to put it generously, our effort was not entirely successful. To be sure, our "restriction" in *Zupo* was tailor-made for the medical condition in that case, namely, osteomyelitis; but given a literal reading, it arguably—and defendant makes the argument here—falls short of accommodating the circumstances of Jeffrey Rahnefeld's injury and sequellae (and, we would note, of the circumstances in *Lind, supra,* 174 *N.J.Super.* 363). More specifically, Security argues that plaintiff's condition was chronic rather than insidious, that there was no "apparent cure," and that the condition could not accurately be said to involve a "recurrence" of a prior medical problem. According to the carrier, Jeffrey was afflicted with a "known condition [that] merely worsened," and his failure promptly "to seek medical assistance in a timely manner" was unreasonable, as was his choice to "suffer" rather than seek medical assistance.

The trial court, in a letter opinion, concluded that plaintiff was not barred by this Court's *Zupo* restriction. It found that Jeffrey suffered from "a medical condition that by its nature indicates the probability of future medical treatment." There was ample support for that finding in the record, particularly in Dr. Ciccone's deposition testimony that at the time of the November 1977 visit, when the doctor suggested that plaintiff return in a year, it was "predictable that the boy would need

further medical treatment at some unspecified time in the future"; that although the left knee was "asymptomatic at the time, * * * it probably would become symptomatic at sometime in the future"; and that "any reasonably competent, experienced medical person looking at the injuries that we had here as reflected in the records [would] be able to draw the same conclusions * * * as to the probability of future treatment." Addressing this Court's reference in *Zupo* to the probability of "recurrence [of the medical condition] after an extended period of apparent cure," the trial court was satisfied that our intent was "simply to describe one acceptable example of why there was no request for additional treatment," but that "this case points up another acceptable scenario, *i.e.*, complaints and suffering, during the treatment gap period, progressively worsening, coupled with a decision to finally seek out medical help." The trial court refused to bar plaintiff merely because "in his situation, the long period between medical treatments was not due to an apparent cure followed by a relapse or recurrence."

In affirming the trial court, the Appellate Division found that this case fell within the reasoning of *Zupo*. The court said:

Given the nature of Rahnefeld's extraordinarily serious injuries, Security knew or should have known that recurrence of medical difficulties for which it would be responsible was "probable." That is at the heart of the *Zupo* decision. In our view, the fact that Rahnefeld suffered in silence over the years made it no less probable that future treatment would be required. Security overemphasizes the term "insidious" as used in *Zupo* and entirely misconceives the term "apparent cure," which, to us, merely describes a period during which there is a hiatus in treatment.

## IV

The courts below have correctly read our purpose as expressed in *Zupo*. Our adoption of the Appellate Division opinion in *Zupo* constitutes express approval of *Lind v. Insurance Company of North America, supra,* 174 *N.J.Super.* 363, in which, as here, "[t]he injuries were of such a nature that future treatment was contemplated and reasonably necessary." *Id.,* at 369. So too does this case fit into so much of the rubric of

*Zupo* as charges the PIP carrier with knowledge of the probable need for future treatment if an original medical condition for which the carrier has assumed a payment obligation is by its nature subject to the probability of a need for future treatment. See *Zupo, supra,* 193 *N.J.Super.* at 382. As the court below so accurately put it, Security's knowledge, with which it was chargeable under the circumstances, that recurrence of medical difficulties for which it would be responsible was probable is "at the heart of the *Zupo* decision."

The "two years after payment" bar would surely apply, however, were the injuries such that the carrier could not know of any such probable recurrence. Nor would we countenance an exception to the bar if the recurrence were caused by circumstances unrelated to the initial injury that rendered the condition subject to PIP coverage in the first instance. (There is no medical evidence in this case that plaintiff's failure to return to Dr. Ciccone as instructed had anything to do with the "worsening" of his condition, and the trial court's careful opinion contains no hint of any such finding.)

If, as the Appellate Division suggests, defendant's reading of our "severely limited class of causally-related medical conditions" language in *Zupo, supra,* 98 *N.J.* at 33, is so literal as to put too fine a point on it, a decent acknowledgement of our own occasional expressional delinquencies obliges us to recognize that our effort to define the class of eligible claimants may have amounted to such a lapse into imprecision as to put too dull a point on it. *Cf. Darel v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 114 *N.J.* 416, 426 (1989) ("We are confident that the world will continue to turn if judges are allowed to correct their mistakes.").

Our extensive exploration in this opinion of the pertinent precedents, together with our reference to the perceptive opinion below in this case, should serve to clarify the matter.

Judgment affirmed.

638

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—6.

*For reversal*—None.