**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1946-23

YVONNE J. TERRELL,

      Plaintiff-Respondent/
Cross-Appellant,

v.

PENAFRANC A. CHITRA,

      Defendant-Appellant/
Cross-Respondent.

_____

Argued November 12, 2025 – Decided January 16, 2026

Before Judges Gilson, Firko, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6089-19.

John V. Mallon argued the cause for appellant/cross-respondent (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John V. Mallon, of counsel and on the briefs; Robert Cappuzzo, of counsel; Robert J. Lombardo, on the briefs).

Brett R. Greiner argued the cause for respondent/cross-appellant (Levinson Axelrod, PA, attorneys; Brett R. Greiner, of counsel and on the brief).

PER CURIAM

Motor vehicles driven by plaintiff Yvonne Terrell and defendant Penafranc Chitra collided at an intersection and plaintiff sustained injuries to her neck, spine, and right shoulder. Plaintiff sued defendant and defendant stipulated that she caused the accident. The matter then proceeded to trial on plaintiff's damages.

Germane to this appeal, the trial involved disputes concerning plaintiff's claims for future medical expenses and lost wages. Before trial, the court barred plaintiff's medical expert from testifying about future medical expenses because, among other reasons, plaintiff had testified at her deposition that she had not proceeded with the surgery recommended by her treating physician. At trial, however, plaintiff changed her position and stated that she was now considering having the surgery. Thus, on plaintiff's motion, the trial court reversed its prior ruling and allowed plaintiff's medical expert to be recalled and testify that the cost of plaintiff's future medical surgery would be approximately $225,000.

On the issue of lost wages, the trial court barred that claim after listening to plaintiff's testimony. The court determined that her testimony concerning her alleged lost wages was too speculative.

2

The jury awarded plaintiff $1,300,000, consisting of $1,000,000 for pain and suffering and $300,000 for future medical expenses. Defendant now appeals, contending primarily that evidence of future medical expenses should have been precluded. Plaintiff cross-appeals from the ruling that barred her from pursuing a claim for lost wages.

Having considered the arguments, record, and law, we reverse the order allowing evidence of plaintiff's future medical expenses. We affirm the order precluding plaintiff's claim for lost wages. Accordingly, we vacate the judgment and remand for a new trial on plaintiff's damage claims without evidence of future medical expenses related to a potential surgery.

I.

On August 6, 2018, defendant was driving her car south on Grove Street in Montclair. At the same time, plaintiff was driving her car west on Watchung Avenue. The cars collided at the intersection of Grove Street and Watchung Avenue. As a result of the accident, plaintiff sustained severe injuries to her neck, cervical spine, lumbar spine, and right shoulder.

Following the accident, plaintiff consulted with several physicians. Her primary treating physician was Dr. Jerald Vizzone, an orthopedic surgeon. Dr. Vizzone recommended that plaintiff undergo two magnetic resonance imaging

(MRI) and an electromyography (EMG). The MRIs and EMG showed that plaintiff had a disc herniation in her spinal cord.

In 2019 and 2020, Dr. Vizzone recommended that plaintiff have surgery involving "an anterior cervical discectomy with total disc replacement and possible fusion" to address the acute traumatic injury to her cervical spine. According to Dr. Vizzone, the surgery would take the pressure off plaintiff's nerves but "would not relieve all of [plaintiff's] pain." Plaintiff was a nurse and Dr. Vizzone explained the risks of the recommended surgery to her. In that regard, the doctor explained that the surgery was complicated, and its risks included "paralysis and death." Plaintiff decided not to go forward with the surgery in 2019 or in 2020.

Plaintiff also consulted with three other physicians, seeking second opinions on her recommended course of treatment. Dr. Dannis, a neurosurgeon, consulted with plaintiff and did not recommend surgery. Instead, he recommended physical therapy. Plaintiff also consulted Dr. Nachwalter, another orthopedic physician. He recommended surgery like the surgery recommended by Dr. Vizzone. Plaintiff also consulted with Dr. Farmer, who was associated with the New York Hospital for Special Surgery. Dr. Farmer

A-1946-23

told plaintiff that surgery would not relieve her pain. After consulting with those four physicians, plaintiff decided not to undergo surgery at that time.

In August 2019, plaintiff sued defendant, seeking damages for the injuries she suffered in the August 2018 motor vehicle collision. Defendant ultimately conceded liability and limited her defense to contesting plaintiff's damages.

In October 2020, when plaintiff was deposed, she testified that she understood the proposed surgery was "very delicate" and "[t]here are many risks involved, and things [could] happen[] where there [could be] lot[s] of negative outcomes." She also explained:

> And I believe in any situation, unless it's an emergency situation where surgery is the only option you have, that you really need to look into all the aspects and then make, you know, an educated decision as to whether this will be of benefit to you. So that's kind of what I was doing.

During discovery, plaintiff named Dr. Lance Markbreiter as her medical expert and he thereafter prepared a written report with five supplements or addenda. The initial report was dated July 14, 2020, and the last addendum was prepared on December 14, 2021. Dr. Markbreiter reviewed plaintiff's medical records, physically examined her three times, and opined that as a result of the automobile accident, plaintiff had permanent injuries to her cervical spine, lumbar spine, and right shoulder.

5

In his last report, dated December 14, 2021, Dr. Markbreiter noted plaintiff had recently informed him that she had not undergone the recommended surgery and "[s]he continues to have concerns regarding future surgical intervention." Thus, as of December 2021, plaintiff had still elected not to undergo the recommended surgery.

In response to discovery requests, plaintiff disclosed that she had $250,000 in automobile insurance coverage available for her personal injury protection (PIP). In March 2022, plaintiff amended her answers to interrogatories to state that she had received $11,810.31 in PIP benefits.

Discovery ended in May 2021. The trial regarding damages was then conducted two years later in September 2023. At no time before trial did plaintiff amend her discovery responses concerning her deposition testimony. Accordingly, prior to trial, plaintiff had testified that she had not proceeded with the recommended surgery. Plaintiff also did not amend her March 2022 interrogatory responses concerning her PIP coverage. Therefore, at the time of trial, according to plaintiff's discovery responses she still had just over $238,000 in potentially available PIP coverage.

In April 2022, defendant moved to preclude plaintiff's medical expert from testifying about plaintiff's future medical costs. The trial court first

6

considered that motion just before trial on September 25, 2023. Defendant made three arguments in support of her motion to strike.

First, she pointed out plaintiff had testified at her deposition that she had not proceeded with the surgery and therefore there was no reason to believe future surgical costs would be incurred. Second, defendant contended that there were collateral sources to pay for her future medical surgery, including PIP coverage. Finally, defendant asserted that Dr. Markbreiter had not been identified as an expert on future medical costs and he did not have the proper basis for offering an opinion.

After considering the arguments of counsel, on September 25, 2023, the trial court barred testimony concerning plaintiff's future medical surgery costs. The court directed that the de bene esse video testimony of Dr. Markbreiter, which had been conducted on March 24, 2022, be redacted to delete any "references to the costs for future surgery" before it was presented to the jury. In explaining its ruling, the court reasoned because there would be no evidence "that the surgery is actually going to take place[,]" there was no basis for a medical expert to offer an opinion as to the cost of any future surgery. In that regard, the court noted "it would be clearly improper" for plaintiff to now change her testimony and say "okay, now I'll get the surgery."

7

The trial court also reasoned Dr. Markbreiter would be attempting to offer a "lay opinion" regarding future medical costs and he had not provided an adequate factual basis that his projected costs were "based on a reasonable degree of medical certainty or medical probability, even if the doctor [was to] say[] those magic words."

Opening statements and the presentation of evidence then began on September 27, 2023. Plaintiff called three witnesses: Dr. Vizzone, Dr. Markbreiter, and Paulette Simpson, who had cared for plaintiff's disabled son. Plaintiff also testified.

Dr. Vizzone explained the treatment he had provided to plaintiff after the 2018 automobile accident. He also reviewed the MRIs plaintiff had undergone, his recommendation for surgery, and the associated risks of the surgery. He testified that in December 2019, plaintiff had informed him "[s]he decided not to proceed with surgery and wanted to continue physical therapy, and was given anti-inflammatories." Dr. Vizzone also testified that he last saw plaintiff in February 2020, and she had still not decided to proceed with the surgery.

Pre-recorded video testimony from plaintiff's medical expert, Dr. Markbreiter, was then presented to the jury. Consistent with his reports, Dr. Markbreiter testified that plaintiff had sustained permanent injuries to her

A-1946-23

cervical spine, lumbar spine, and right shoulder. He also opined that the prognosis for plaintiff's injuries was poor. In accordance with the trial court's ruling, Dr. Markbreiter did not initially testify about plaintiff's future costs for surgery.

Plaintiff thereafter testified on September 28, 2023. Plaintiff informed the jury that she had been concerned about proceeding with surgery from 2018 through 2020 because "[t]he risks were too great . . . [and she] didn't want to stand the chance of not being able to function and take care of [her] son." Plaintiff elucidated that her son was disabled, he needed significant care with his daily tasks, and she was concerned she might not be able to assist with his care if she underwent the surgery.

Plaintiff then testified that her son had recently passed away and therefore she was "exploring having the surgery at this point." Plaintiff told the jury: "I was going to make an appointment with [the] Hospital for Special Surgery to get a re[-]evaluation and proceed with that, if that's what I needed to [do]." Plaintiff went on to testify:

> I believe I'm going to have pain for the rest of my life.
> Surgery may help. I don't know yet. I have to talk and
> get that information and, you know.

9

A-1946-23

I mean, I am planning to have the -- I'm going to have the surgery because it seems that that's my only option right now. So that's -- that's it.

On redirect, plaintiff was asked: "Okay. But at this point, your -- your intention is to move forward with that procedure?" Plaintiff responded: "I do. My -- my symptoms are getting worse. I think that's my only option right now."

Plaintiff also provided testimony concerning the impact her injuries had on her activities. She told the jury that she was sixty-seven years old at the time of trial. She explained that she had worked as a fulltime nurse in the cardiac unit for Clara Maass Medical Center and worked part time at St. Michael's Medical Center and Mountainside Hospital on weekends. She stated she had planned to work until she was seventy years old but decided to retire at sixty-seven because she did not feel she could continue her job as a nurse.

At the end of plaintiff's testimony, she rested her case. Defendant then presented testimony from her two medical experts, and she rested her case.

Thereafter, plaintiff's counsel made an oral motion, requesting the court to reconsider its decision that barred testimony regarding the cost of plaintiff's future medical surgery. Counsel argued that plaintiff's trial testimony indicating her intention to go forward with surgery was grounds for reconsidering the court's prior ruling. The defense objected, arguing that the testimony regarding

10

surgery was speculative and the PIP statute precluded admission of future medical expenses because there was still available PIP coverage. The parties disputed whether her PIP carrier would pay for plaintiff's future surgery because the PIP statute of limitations might now preclude PIP coverage.

After hearing the arguments of counsel, the trial court reversed its earlier ruling and decided that plaintiff could offer testimony concerning the future costs of surgery. The court did not address the PIP statute's prohibition on the inadmissibility of costs covered by PIP benefits. Instead, the court reasoned that any verdict for future medical expenses could be reduced or vacated if plaintiff's PIP carrier, State Farm, paid for the surgery. The court also reasoned that defendant could sue State Farm for the future medical expenses.

Plaintiff then played an excerpt from the recorded de bene esse testimony of Dr. Markbreiter for the jury. In that segment of his testimony, Dr. Markbreiter opined that the reasonable and customary costs for plaintiff's future medical surgery would be "approximately [$200,000]" and could "exceed $225,000." The jury also heard an excerpt from the cross-examination of Dr. Markbreiter. That was the last testimony the jury heard.

The following day, on September 29, 2023, the jury heard closing statements and was given instruction by the court. After deliberating, the jury

11

returned its verdict. It awarded plaintiff $1,000,000 for her pain, suffering, disability, and loss of enjoyment of life and $300,000 for her future medical expenses.

On January 18, 2024, the trial court molded the verdict into a judgment order. In addition to the $1,300,000, the court awarded prejudgment interest of $171,549.60 and entered a judgment in the amount of $1,471,549.60 plus post judgment interest. The trial court also added a provision concerning the potential for future PIP medical benefits. In that regard, the judgment included a provision that stated:

> Ordered that with respect to the future medical costs, plaintiff, through her counsel, provide defendant's attorney notice of the scheduling of such future care, the identity and address of the providers and an assignment of rights in order to protect the subrogation rights of defendant against the PIP benefits of the personal automobile policy of plaintiff, and that such obligation remains ongoing until such time as PIP benefits are exhausted[.]

Defendant now appeals from the final judgment. Plaintiff cross-appeals from the ruling barring her from pursuing a claim for lost wages.

## II.

In her appeal, defendant makes a series of arguments, contending that plaintiff's future medical costs were inadmissible and should not have been

considered by the jury. She asserts that plaintiff's PIP benefits were not exhausted and, therefore, evidence of the future medical expenses should have been barred under the No-Fault statute. She also argues that the subrogation provision in the final judgment was contrary to well-established law and was improper. Additionally, plaintiff contends that Dr. Markbreiter was not qualified as an expert on future medical expenses and the procedures that led to his testimony were prejudicial.

Defendant also argues that plaintiff failed to disclose the material change in her testimony regarding her willingness to undergo surgery before trial and that failure is an independent basis for precluding her testimony. Furthermore, defendant contends that the entire jury award must be vacated because the introduction of inadmissible future medical expenses tainted the jury's award on pain and suffering. Finally, defendant argues that plaintiff's counsel made inappropriate comments in the opening and summation, and those comments warrant a reversal and a new trial.

A.    Plaintiff's Future Medical Expenses.

Generally, an appellate court will review a trial court's ruling on an evidentiary issue for an abuse of discretion. Schwartz v. Menas, 251 N.J. 556, 570 (2022) (citing Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019)).

"A court abuses its discretion when its 'decision is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis."'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

By contrast, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Accordingly, issues of statutory interpretation are reviewed de novo. Kocanowski v. Township of Bridgewater, 237 N.J. 3, 9 (2019) (citing State v. Fuqua, 234 N.J. 583, 591 (2018)).

1. The No-Fault Statute's Prohibition on the Admission of Costs Covered by PIP Benefits.

New Jersey has a no-fault system governing medical expenses for personal injuries suffered in automobile accidents. N.J.S.A. 39:6A-1 to -35; see also Roig v. Kelsey, 135 N.J. 500, 502-04 (1994) (explaining the background and purpose of New Jersey's no-fault statutory scheme). Under that system, a motorist's automobile insurer is required to pay for the medical expenses up to the limits of the PIP coverage. See N.J.S.A. 39:6A-4(a); N.J.S.A. 39:6A-4.3(e).

To help reduce costs, the no-fault system also bars an injured motorist from introducing "evidence of the amounts collectible or paid" by their PIP carrier if they sue the other driver.  N.J.S.A. 39:6A-12.  That statute states:

> [E]vidence of the amounts collectible or paid under a standard automobile insurance policy . . . a basic automobile insurance policy[, or] . . . a special automobile insurance policy . . . to an injured person, including the amounts of any deductibles, copayments, or exclusions . . . is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
>
> [N.J.S.A. 39:A-12.]

The statute goes on to direct that juries in civil actions are to be instructed that they cannot consider or speculate "as to the amount of the medical expense benefits paid or payable by an automobile insurer under personal injury protection coverage payable under" an automobile insurance policy.  Ibid.

Additionally, the statute provides:

> Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss . . . including all uncompensated medical expenses not covered by the personal injury protection limits applicable to the injured party and sustained by the injured party.  All medical expenses that exceed, or are unpaid or uncovered by any injured party's medical expense benefits personal injury protection limits, regardless of any health insurance coverage, are claimable by any

15

> injured party as against all liable parties, including any self-funded health care plans that assert valid liens.

> [Ibid.]

The language of the statute is clear. A plaintiff suing a defendant for personal injuries arising out of an automobile accident cannot introduce evidence of the amounts collectible from or paid by a PIP carrier. Significantly, the Legislature made the word "collectible" disjunctive from the word "paid." Tullis v. Teial, 182 N.J. Super. 553, 558 (App. Div. 1982). Thus, we have explained that it "is manifest that the money need not be paid for proof of the bill to be barred. This is so because the words 'collectible or paid' are written in the disjunctive." Ibid.

It is undisputed that plaintiff's automobile policy provided PIP benefits in the amount of $250,000. It is also undisputed that at the time of trial, State Farm, plaintiff's PIP carrier, had paid $11,810.31 in PIP benefits to plaintiff. Consequently, there was $238,189.69 in remaining PIP benefits.

The plain language of N.J.S.A. 39:6A-12 prohibited plaintiff from introducing evidence of any future medical costs up to $238,189.69. Consequently, the court erred when it allowed Dr. Markbreiter to testify that plaintiff's potential future surgery costs would be approximately $200,000 to $225,000.

Plaintiff argues that Dr. Markbreiter's testimony regarding future medical expenses was admissible because plaintiff's PIP benefits might not be recoverable from State Farm as the PIP statute of limitations might bar that coverage. We reject that argument for several reasons.

First, it is not clear that plaintiff's claim for PIP benefits will be barred. The governing statute of limitations is set forth in N.J.S.A. 39:6A-13.1. That provision states, in relevant part, that

> [e]very action for the payment of benefits payable under a standard automobile insurance policy . . . shall be commenced not later than two years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than four years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than two years after the last payment of benefits.

> [N.J.S.A. 39:6A-13.1.]

That statute of limitations, however, can be extended in certain circumstances. Accordingly, we have held:

> that when a carrier has made PIP payments in connection with a compensable injury and is chargeable with knowledge at the time of its last payment that the injury will probably require future treatment, then the "two-year after payment" provision of N.J.S.A. 39:6A-13.1 will not bar an action brought within a reasonable

17

time after rejection of a prompt claim for payment of additional medical expenses for such treatment.

[Zupo v. CNA Ins. Co., 193 N.J. Super. 374, 384 (App. Div. 1984), aff'd, 98 N.J. 30 (1984).]

See also Rahnefeld v. Sec. Ins. Co. of Hartford, 115 N.J. 628, 636 (1989) (alteration in original) (quoting Lind v. Ins. Co. of N. Am., 174 N.J. Super. 363, 369 (Law Div. 1980)) (explaining that the PIP statute of limitations will not bar claims when "[t]he injuries were of such a nature that future treatment was contemplated and reasonably necessary").

Accordingly, nothing in the current record establishes that plaintiff could not recover her medical expenses for future surgery from her PIP carrier. Thus, if those future expenses are still potentially "collectible" evidence of that amount is barred in a civil action under N.J.S.A. 39:6A-12.

Second, plaintiff made a knowing election not to proceed with the surgery at a time when her PIP benefits were available. Plaintiff's primary treating physician, Dr. Vizzone, repeatedly recommended that plaintiff undergo the surgery in 2019 and 2020. Plaintiff also knew that she had PIP coverage available up through March 2022 to pay for the surgery. Plaintiff, however, decided not to proceed with the surgery. We do not fault that decision. It was plaintiff's to make. But having decided not to proceed with the surgery when

she had PIP coverage available, plaintiff should not now be allowed to change her position during trial. Plaintiff made the election, and she must bear the consequences.

That second point leads to a third point. At no time before trial did plaintiff amend her discovery responses to state that she was going to change her position and go forward with the surgery.

2. Plaintiff's Changed Position Regarding Future Surgery.

Before trial began in September 2023, plaintiff had not undergone the surgery, which had been recommended for over three years. Indeed, in 2019 and 2020 her treating doctor and a second-opinion doctor both recommended surgery, but plaintiff decided not to have the surgery. She confirmed that position under oath at her deposition in October 2020.

At no time prior to trial did plaintiff amend her interrogatory responses to state she was either considering getting the surgery or that she would in fact undergo the surgery. That failure to amend her discovery responses is an independent basis for precluding plaintiff from now seeking future medical costs related to future surgery. See R. 4:17-7 (stating that when a party's interrogatory responses become "incomplete or inaccurate," the party must amend those responses at least twenty days prior to the close of discovery, and that failure to

19

do so results in the amendments being "disregarded"). That amendment, moreover, needed to have been made well before trial. See Smith v. Schalk, 360 N.J. Super. 337, 345-46 (App. Div. 2003) (holding that amending discovery responses on the "eve of trial . . . unfairly prejudiced" the defendant); Mauro v. Owens-Corning Fiberglas Corp., 225 N.J. Super. 196, 207-08 (App. Div. 1988) (same).

Plaintiff's counsel tries to argue that her deposition testimony was not definitive. We reject that argument. Plaintiff definitively testified that as of October 2020, she had not gone forward with the surgery.

Just as importantly, plaintiff's failure to amend her discovery responses also prejudiced defendant. Prior to trial, defendant reasonably believed that plaintiff had decided not to go forward with the surgery. Indeed, in April 2022, defendant moved to preclude any testimony regarding the cost of the future surgery. Throughout the course of the trial and up until plaintiff testified as the last witness before resting, defendant was defending a case where the cost of future medical expenses had been barred. Thus, when plaintiff testified at trial and changed her position, that change of position prejudiced the defense. See McKenney v. Jersey City Med. Ctr., 167 N.J. 359, 370 (2001) (holding that a

party may be prejudiced by a "radical change" in a witness' testimony from their deposition when counsel knew or should have known of the change).

Had plaintiff changed her position in a timely manner when discovery was still open before May 2021, defendant could have taken action to require, if necessary, plaintiff to preserve her right to seek the cost of surgery from State Farm, her PIP carrier. In that regard, defendant could have brought a motion to require plaintiff to take a definitive position regarding whether she was going forward with the future surgery and to create a record that if she would not commit to the surgery, then she was making a binding election because the PIP coverage was "collectible" in 2021 when discovery ended.

Finally, we hold that plaintiff should not have been allowed to change her position regarding whether she was going to get the surgery because she did not make that decision definitively even at trial. Her trial testimony is equivocal. She did not testify that she was definitely getting the surgery. Instead, she indicated she was planning to make an appointment with the Hospital for Special Surgery to get a re-evaluation, and that she might undergo the surgery. Indeed, at oral argument in this matter before us in 2025, plaintiff's counsel confirmed that plaintiff had still not undergone the surgery.

A-1946-23

In summary, given that plaintiff did not amend her discovery responses while discovery was open, or even before trial, and given her failure to amend prejudiced the defense, she is barred as a matter of law from seeking future medical expenses related to the surgery from defendant.

Given that ruling, we need not address defendant's additional argument that Dr. Markbreiter was not qualified to offer an opinion regarding future medical expenses. We do point out, however, that because plaintiff never took a definitive position as to whether she was going forward with the surgery, Dr. Markbreiter's opinions, which were offered in March 2022, had no reliable factual basis that the surgery would in fact take place. In short, without definitive testimony from plaintiff that she would be getting the surgery, Dr. Markbreiter's testimony lacked a necessary factual foundation: that is, that the surgery would take place at some point in the future. See N.J.R.E. 703; Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002) ("N.J.R.E. 703 requires that an expert's opinion be based on facts, data, or another expert's opinion, either perceived by or made known to the expert, at or before trial.").

A-1946-23

3. The Subrogation Provision in the Judgment.

Defendant also argues that the trial court's subrogation provision in the judgment order was "contrary to well settled law" and it "improperly assigned" benefits to a non-provider of services. We agree.

The right to subrogate against an insurance provider is established in N.J.A.C. 11:3-4.9(a). That code section provides that "[p]ursuant to N.J.S.A. 39:6A-4, an insured may only assign benefits and duties under the policy to a provider of service benefits . . . [i]nsurers may not prohibit the assignment of benefits to providers." Ibid.

In contradiction to N.J.A.C. 11:3-4.9, the trial court added a provision to the judgment subrogating plaintiff's rights against her PIP insurer to defendant. That provision is without precedent, and we are not aware of any statute or case law that would allow such a provision. Indeed, neither plaintiff nor defendant cited any law allowing subrogation of PIP benefits to a tortfeasor.

Furthermore, that subrogation provision would be subject to challenge by State Farm, because State Farm was not a named party to the lawsuit and would have a right to dispute the subrogation provision. See N. Haledon Fire Co. No. 1 v. Borough of North Haledon, 425 N.J. Super. 615, 628 (App. Div. 2012) (quoting In re Application of Mallon, 232 N.J. Super. 249, 254 n.2 (App. Div.

1989)) (explaining that "[j]udgment or orders normally do not bind non-parties").

B.     A New Damage Trial.

Having ruled that plaintiff should not have been permitted to introduce evidence of her alleged future medical costs related to future surgery, we vacate the entire judgment and remand for a new trial on damages. The New Jersey Supreme Court has explained that "a claim for future medical expenses is not separable from seeking compensation for pain and suffering." Brehme v. Irwin, 259 N.J. 505, 518 (2025). In that regard, the Court explained that "[i]t is well established that personal injury awards are generally not divisible." Ibid. (citing Caldwell v. Haynes, 136 N.J. 422, 442 (1994)). The Court also explained "[t]hat is especially true where the evidence of pain and suffering is inextricably linked to evidence of future medical expenses. One jury cannot hear evidence relevant to pain and suffering and another jury hear evidence relevant to future medical expenses." Ibid.

At the trial in this matter, the jury improperly heard testimony regarding plaintiff's future medical expenses related to a potential surgery, and that testimony affected the jury's decision regarding the pain and suffering award. Consequently, we vacate the complete award and remand for a new trial on

damages. At that new trial, plaintiff will be precluded from introducing any evidence related to future medical expenses. In that regard, we note that plaintiff did not identify any future medical expenses other than the potential costs for surgery. As we have ruled that those future surgical costs are not admissible, plaintiff can present no evidence related to future medical expenses.

## III.

In her cross-appeal, plaintiff contends that the trial court erred in precluding her from seeking damages for future lost wages. We review that evidentiary ruling for an abuse of discretion. Schwartz, 251 N.J. at 570 (citing Rodriguez, 237 N.J. at 57).

A claim for future lost income "must be supported by two things: (1) 'a reasonable probability' of such a loss flowing from the past harm; and (2) 'sufficient factual matter upon which the quantum of diminishment can reasonably be determined.'" Haywood v. Harris, 414 N.J. Super. 204, 214 (App. Div. 2010) (emphasis omitted) (quoting Coll v. Sherry, 29 N.J. 166, 176 (1959)). "The 'mere possibility' of lost earning capacity is insufficient." Ibid. (quoting Lesniak v. County of Bergen, 117 N.J. 12, 24 (1989)). Accordingly, a claimant must "adduce sufficient proof so that 'the jury could make a dollar-and-cents calculation of the loss.'" Ibid. (quoting Lesniak, 117 N.J. at 25).

A-1946-23

After the close of evidence, the trial court determined that plaintiff had not established a sufficient factual basis to support a claim for future lost wages. The court pointed out that plaintiff had retired at age sixty-seven, five years after the date of the accident. The court then reasoned that it would be "speculative" to try to determine what future wages plaintiff would lose because of the accident in August 2018. We discern no abuse of discretion in that determination.

Plaintiff did not present evidence that there was a reasonable probability that her decision to retire five years after the accident was a result of the accident. Moreover, plaintiff did not present any expert testimony that would explain to the jury the quantum of diminishment in her lost earning capacity. For example, there was no testimony from a witness, such as a vocational expert, explaining whether plaintiff could perform other jobs given her injuries. While plaintiff testified that her injuries prevented her from working as a nurse, she did not present evidence regarding her ability to engage in other types of employment, nor did her medical expert discuss the impact of her injuries on her ability to work in other qualified positions. Consequently, plaintiff's claim for future lost wages failed to meet the standard set forth by the Court in <u>Haywood</u>.

26

We therefore discern no basis for reversing the trial court's decision precluding plaintiff's claims for lost wages.

## IV.

In summary, on defendant's appeal, we reverse the trial court's decision allowing plaintiff to present evidence of her future medical expenses. On plaintiff's cross-appeal, we affirm the trial court's decision precluding plaintiff from seeking damages for future lost wages. We vacate the entire judgment and remand the matter for a new trial on damages. At that trial, plaintiff cannot introduce evidence of her future medical expenses, nor can she make a claim for future lost wages.

We add one additional comment. While we need not address defendant's challenges to plaintiff's counsel's statements during opening and closing because there will be a new trial, we point out that some of those statements were improper. Therefore, at the new damages trial, plaintiff's counsel should not make unsupported statements or arguments.

Reversed in part, affirmed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

27