193 N.J. Super. 374 (1984)
474 A.2d 259
ALECIA M. ZUPO, PLAINTIFF-APPELLANT,
v.
CNA INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 6, 1983.
Decided January 18, 1984.
*377 Before Judges BOTTER, PRESSLER and O'BRIEN.
Albert W. Seaman, attorney for appellant (John M. Dudas, on the brief).
Pillsbury and Russell, attorneys for respondent (William E. Russell, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal raises a difficult problem of interpretation of the limitations provision of the New Jersey Automobile Reform Act (No Fault Law), N.J.S.A. 39:6A-1 et seq.; 39:6A-13.1. Concluding that plaintiff's claim for payment of medical expenses was time-barred by that statutory provision, the trial court granted defendant's motion for summary judgment dismissing the complaint. We reverse.
The record is regrettably sparse. Insofar as we can determine, plaintiff Alecia M. Zupo was struck by a motor vehicle in July 1973. Since she was a pedestrian who did not own an *378 automobile and was not a member of a household covered by no fault insurance, she made her claim for personal injury protection benefits (PIP) to defendant CNA Insurance Company (CNA), the liability carrier for the driver of the automobile which had hit her. She sustained serious injuries of her left ankle and foot, requiring an open reduction of fractures and eventually an ankle fusion and bone graft. It appears that she was under active treatment for these injuries until May 1975. It also appears that during this protracted period of medical attention she developed an osteomyelitic infection at the injury site which required extensive treatment. CNA paid all of the medical expenses then incurred, the last payment being made some time in 1975 after her last hospitalization.
In November 1980 plaintiff suffered a recurrence of the osteomyelitis. She returned to the orthopedic surgeon who had originally cared for her and, after the failure of an extended course of conservative treatment, she was readmitted to the hospital in May 1981 for intensive antibiotic therapy. Her claim against CNA for the medical expenses she incurred in obtaining treatment for the recurrence of the osteomyelitis was rejected by it in a written letter relying on N.J.S.A. 39:6A-13.1. This action, seeking recovery from CNA, was commenced in February 1982, some fifteen months after the onset of the recurrence of the disease.
CNA first moved for summary judgment dismissing the complaint in April 1982. The record on appeal fails to include any of the papers submitted by the parties in support of and opposition to the motion. We have only an order entered in May 1982, denying the motion and referring to an oral argument, the transcript of which we also do not have. There is thus nothing in the record to suggest the court's reason for the denial.
CNA apparently renewed its motion in July 1982. Again, the record is devoid of any documents submitted in connection with the renewal. This time, however, it appears that the motion *379 was considered without oral argument. It resulted in an order entered by the same judge in August 1983 granting the motion. There appear to be no reasons stated in the record for this action. The only reference in the entire record to evidence on the motion is the statement made in CNA's trial brief that "for the purpose of this motion it is conceded that the Plaintiff has chronic osteomyelitis which is causally related to the injuries she received in July 26, 1973."
The disregard by plaintiff of the appendix requirements prescribed by R. 2:5-4 would justify our dismissal of the appeal. We have opted, however, to consider its merits because of the narrowness of the issue involved and our reluctance to penalize litigants by the loss of a meritorious cause when they themselves are in no way at fault.
We gather that plaintiff's theory, as a matter of law, fact and medicine, is that osteomyelitis is an insidious disease which by its nature eludes complete eradication under the present state of the medical art. Since the carrier knew from early on in her original course of treatment that she suffered from this disease as a result of the accident, it was also chargeable with the knowledge that she would almost inevitably suffer a flare-up in the undefined future which would require medical treatment. She therefore argues that CNA is responsible for the expenses of treatment whenever the need for it should arise.
Plaintiff's argument is not without merit. N.J.S.A. 39:6A-13.1(a) provides in full as follows:
Every action for the payment of benefits set forth in sections 4 and 10 of this act, except an action by a decedent's estate, shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits. [Statutory cross-reference omitted]
It is clear that the statute contemplates two quite distinct situations having distinct limitations consequences. The first is that in which the PIP carrier has never made a PIP payment, *380 either because not called upon to do so within the statutory period or because it has declined to do so on some basis perceived by it as justifying its rejection of the claim. That portion of the statute has been recently construed by the Supreme Court in Ochs v. Federal Ins. Co., 90 N.J. 108 (1982), as time-barring an action for PIP payments if it is not commenced within the two-year period after the date of the accident or after the date on which the insured became aware that his injuries were related to the accident. If the insured is excused from bringing the action within two years after the accident by reason of the statute's incorporation of the "discovery rule" alternative, the action will in any case be barred if not commenced within four years after the date of the accident.
The other situation addressed by the statute is that in which benefits have been paid by the carrier. Where payment has been made, the insured is free to bring an action for additional benefits within two years after the last payment, irrespective of the length of time which may have elapsed between that date and the date of the accident. Thus, the fact of payment has the capacity of taking the claim out of the basic two-year/four-year limitation of the statute altogether.
The disparate limitations consequences assigned by the Legislature to these two distinct situations reflect basic policy concerns of the No Fault Law. Thus, where the carrier has either not received a claim at all or has rejected it without making any payment, it is accorded the right to rely on the repose afforded by the two-year/four-year limitations formulation. Different considerations are, however, implicated once a carrier has acknowledged its responsibility to pay PIP benefits.
A fundamental component of the no fault scheme is the right of an insured to receive payment from his PIP carrier for all medical expenses incurred by him in connection with a compensable injury irrespective of the amount of the expenses or the length of the time during which they are incurred. Thus, as the court observed in Ochs v. Federal Ins. Co., supra at 114, *381 "once payment is determined to be due, the statute does not place any time limitations on the payment of future benefits." Consequently, when a carrier acknowledges its responsibility for medical expenses by the unambiguous act of making payment, it is also necessarily assuming the responsibility to continue to make future payments for an indefinite period of time provided only that the claimed medical expenses are related to and are necessitated by the original occurrence.
Thus, if an insured suffers from a medical problem requiring continuing treatment, his right to payment from his PIP carrier is vouchsafed for the indefinite future. It is also vouchsafed for the indefinite future so long as he has a continuing need for treatment at intervals no greater than two years. That is the express statutory provision of N.J.S.A. 39:6A-13.1. Thus, the situation which the statute directly addresses is a medical condition which is either chronic or will predictably require treatment at no greater than two-year intervals. It does not address a medical condition whose inherent nature is periodic recurrence at indefinite and unpredictable intervals which may be as protracted as the five-year interval here.
The carrier contends that since the Legislature failed to provide for that kind of medical situation, the "two-year after payment" bar must be literally applied, and this action must consequently fail. We are satisfied, however, that the Legislature did not intend so anomalous a result and that its failure to have expressly provided for a situation such as this must be regarded as an oversight subject to the court's remedial interpretation in order to effectuate actual legislative intent.
In our view, we would contravene logic, common sense and the basic purpose of reparation underlying the No Fault Law if we were to assume a legislative intention to condition an insured's right to future medical benefits on the fortuity of the timing of the recurrence of a compensable illness which, from its onset and certainly at the time the carrier made its last *382 payment, was known by it to be of a recurrent nature. We are convinced that it was not the legislative intent to confer upon a carrier immunity from its payment obligation simply by reason of that fortuity. We are therefore persuaded that if the original medical condition for which the PIP carrier has assumed a payment obligation is by its nature subject to the probability of recurrence or to the probability of the need for future treatment, the carrier is chargeable at the outset with knowledge of these inherent probabilities. It is also, therefore, fairly chargeable with anticipating from the outset the likelihood of being called upon to make treatment payments in the future. It obviously makes no conceptual difference if the original anticipation is a recurrence of the compensable illness two years after the last payment or more than two years thereafter, provided only that it is in the nature of the illness that recurrence is likely after an interval of time. We perceive no purpose or policy served by a limitations statute which would be promoted by excusing a carrier from its obligation simply because the insured suffers a compensable illness which is known to be subject to recurrence at intervals greater than two years. We therefore cannot ascribe to the Legislature an intent to make an insured's right to future medical benefits dependent on so irrational a criterion as the length of the interval between recurrences of a compensable illness. The only rational criterion is that the interval, whatever its length, is characteristic of the illness and hence that a recurrence of the illness after that interval is within the carrier's original anticipation.
The trial court was faced with a similar problem in Lind v. Insurance Co. of North America, 174 N.J. Super. 363 (Law Div. 1980), affirmed o.b. 193 N.J. Super. 303 (App.Div. 1983) (one judge dissenting). There a seven-year-old child was injured in 1974 and PIP benefits were paid until 1975, when the child's active treatment was discontinued. It was at that time anticipated that the injuries would require future surgery, which was deferred until 1978 because of the child's age. The carrier *383 refused to pay contending that the claim was time-barred since the surgical expense was incurred more than two years after the last payment. Judge Gibson rejected the limitations defense despite his conclusion that the claims of minors are not tolled by N.J.S.A. 39:6A-13.1. His rationale is singularly apt here. Observing first the unlikelihood that the Legislature intended to bar the claim in view of the fact that it arose from an admittedly compensable accident and that the parties at an early stage contemplated the need for future treatment, he reasoned that the policy considerations of the Act outweighed its limitations provision. Thus, relying on the general principles underlying limitations provisions and their exceptions, the judge concluded that
In applying these principles to the case at bar, an allowance of the within claim would do violence to neither the purposes underlying the No Fault Act nor those identified with statutes of limitations generally. This is not a situation where the plaintiff "has slept on his rights." * * * Since the company recognized its obligation under the policy from the outset, there was no reason to suspect that its position would change when presented with future expenses admittedly related to the accident. When in fact it took a contrary position, suit was quickly instituted. Accordingly, defendant cannot suggest that this is a stale claim or that it has been prejudiced. Indeed, neither claim has been made. Finally, this is not a case where the carrier should have legitimately been entitled to repose. The injuries were of such a nature that future treatment was contemplated and reasonably necessary. To shield it from its obligation to compensate plaintiffs here would constitute a windfall and would be inconsistent with the "utmost good faith" required by insurance companies. * * *
This court does not reach these conclusions lightly. Recognition, naturally, must be given to the primary role of the Legislature in correcting inequities that may exist in the statutes it creates. * * * Nevertheless, such recognition should not serve to preclude a result which would otherwise fulfill the clearly defined goals of this statute. [174 N.J. Super. at 369 (citations omitted)]
We are in accord with Judge Gibson's reasoning in Lind. We are aware that it has been criticized by this court in dictum in Still v. Ohio Cas. Ins. Co., 189 N.J. Super. 231, 235 (App.Div. 1983), with which the dissenting judge in Lind agreed. Nevertheless, we point out that the Legislature did not respond to Lind by amending N.J.S.A. 39:6A-13.1 to overrule its result. Considering its presumed knowledge of the Lind decision and its recent intensive attention to the No Fault Law which nevertheless *384 left N.J.S.A. 39:6A-13.1 intact, see L. 1983, c. 362, we are satisfied that the statutory construction in Lind did not contravene legislative intent. See, e.g., Barringer v. Miele, 6 N.J. 139, 144 (1951); State v. Gussman, 34 N.J. Super. 408, 416 (App.Div. 1955).
We therefore hold that when a carrier has made PIP payments in connection with a compensable injury and is chargeable with knowledge at the time of its last payment that the injury will probably require future treatment, then the "two-year after payment" provision of N.J.S.A. 39:6A-13.1 will not bar an action brought within a reasonable time after rejection of a prompt claim for payment of additional medical expenses for such treatment.
Because of the state of the record here, we are unable to determine whether CNA was chargeable at the time of its last payment with knowledge that plaintiff's condition would likely require future treatment. We are satisfied from its own concession that plaintiff's instant claim is causally related to the original accident. It also appears when the carrier made its last payment it knew that plaintiff suffered from a causally related osteomyelitis. There is no proof in the record, however, that as a medical fact osteomyelitis is so likely to recur after a protracted period of apparent cure as to render its recurrence after five years a probable event. If there were such proof, the no fault carrier would be chargeable with knowledge of that fact and its responsibility would extend to payment of this claim. If the probability of such recurrence is not a medical fact, then it would not be responsible for this claim. We therefore remand to the trial court to determine in an evidential hearing whether, as a matter of medical probability, CNA is chargeable with anticipating this claim when it made its last payment.
We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.