744 A.2d 175

ROSA APONTE–CORREA, FORMERLY KNOWN AS ROSA APONTE, PLAINTIFF–RESPONDENT, v. ALLSTATE INSURANCE COMPANY, DEFENDANT–APPELLANT.

Argued September 27, 1999—Decided February 1, 2000.

*Francis X. Ryan* argued the cause for appellant (*Green, Lundgren & Ryan,* attorneys; *Mr. Ryan* and *David A. Grabowski,* on the briefs).

*Melville D. Lide* argued the cause for respondent (*Radano & Lide,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal requires us to interpret the provision of the No Fault Insurance Act (the Act), *N.J.S.A.* 39:6A–1 to –35, that

prescribes limitations periods for suits arising out of the refusal by an insurer to pay medical expenses resulting from an automobile accident. The Act provides in pertinent part:

> Every action for the payment of benefits ... shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, *provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits.*
>
> [*N.J.S.A.* 39:6A–13.1a [1] (emphasis added).]

The unitalicized or "first" portion of the statute requires claimants to file suit within two years of the known injuries or expenses and within four years of the date of the accident, whichever is earlier. *Ibid.* The italicized or "second" portion of the statute provides that an action seeking payment for further benefits may be instituted within two years of the insurer's last payment of benefits. *Ibid.* The interpretative issue is whether Personal Injury Protection (PIP) claimants who receive from their own carrier a payment of medical benefits at any time within the limitations period set forth in the first part of the statute are restricted in bringing suit against their carrier to the limitation period provided in the second part of the statute, or whether they may take advantage of either the limitations period in the first or second portion of the statute. The Appellate Division held that an action for further benefits by a claimant who had received PIP benefits within four years of the accident is timely if it complies with either portion of the statute. We granted defendant's petition for certification, 160 *N.J.* 91, 733 *A.*2d 496 (1999), and now affirm.

I

The critical facts of this case are undisputed. On November 22, 1992, plaintiff Rosa Aponte–Correa was injured in an automobile

---

[1] *N.J.S.A.* 39:6A–13.1a was amended in *1998*. The amendments to that section are minor and are not implicated in this appeal.

accident. After undergoing a series of tests, plaintiff was diagnosed with borderline Carpal Tunnel Syndrome and also was treated for neck pain. Defendant Allstate Insurance Company (Allstate) paid plaintiff's medical expenses from December 1992 until December 28, 1993. On July 10, 1995, plaintiff underwent further medical testing for symptoms related to the 1992 accident. Those tests revealed continued borderline Carpal Tunnel Syndrome and neck pain. Despite repeated telephone calls and letters from plaintiff to Allstate between February 1, 1996 and the filing of suit, Allstate never issued a "cut-off" letter to plaintiff. Because of her concern about the statute of limitations, plaintiff pressed Allstate for an answer about whether it intended to pay the bills or whether she should file suit. Allstate responded that it had not received the bills and that plaintiff should "do whatever she has to do." Allstate subsequently declined either to pay or to reject the bills submitted by plaintiff.

On July 24, 1996, plaintiff filed a complaint for payment of her PIP benefits. Although the complaint was filed within four years of the accident and within two years of the date that plaintiff incurred her first uncompensated expense, the filing date was more than two years after Allstate's last payment of PIP benefits. Subsequently, the parties proceeded to an arbitration hearing that resulted in Allstate being ordered to pay plaintiff's medical bills, counsel fees, and costs. Allstate refused to pay and moved for summary judgment, asserting the protection of the statute of limitations provision of the Act, *N.J.S.A.* 39:6A–13.1a. Allstate contended that plaintiff's claim was time-barred because it was not filed within two years of its last payment of benefits.

Accepting Allstate's assertion, the trial court found that plaintiff's suit was barred because it was commenced more than two years after the last payment by Allstate, and therefore granted summary judgment to Allstate. The Appellate Division reversed. It held that "[t]he statute of limitations is satisfied if the date of commencement of suit meets either of the[ ] two alternative tests."

*Aponte–Correa v. Allstate Ins. Co.*, 317 *N.J.Super.* 597, 606, 722 *A.2d* 955 (App.Div.1999).

## II

### A

The view of our dissenting colleagues, the decisions of the various Appellate Division panels that have construed the statute, and the literal language of the statute persuade us that the statute at issue is susceptible to more than one interpretation. Because the PIP limitations statute is not clear and unambiguous, we consider sources other than the literal words of the statute to guide our interpretative task. "If the text ... is susceptible to different interpretations, the court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent." *Township of Pennsauken v. Schad,* 160 *N.J.* 156, 170, 733 *A.2d* 1159 (1999). Above all, we "seek to effectuate the 'fundamental purpose for which the legislation was enacted.'" *Ibid.* (quoting *New Jersey Builders, Owners and Managers Ass'n v. Blair,* 60 *N.J.* 330, 338, 288 *A.2d* 855 (1972)). Where a literal reading will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. *Jersey City Chap. Prop. Owner's Protective Ass'n v. City Council,* 55 *N.J.* 86, 100, 259 *A.2d* 698 (1969). As Justice Jacobs stated, "[w]hen all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms, or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation." *Ibid.*

The underlying purpose of the No Fault Act is reparation. See *Automobile Insurance Study Commission, Reparation Reform for New Jersey Motorists* at 7 (December 1971) (Commission's Report). It was enacted primarily to assure that injured plaintiffs are compensated promptly for medical treatment resulting from injuries received in an automobile accident. *Id.* at 7

(stating that one of four objectives of No Fault Law is to ensure "the prompt and efficient provision of benefits for all accident injury victims").

This Court's decisions in *Zupo v. CNA Insurance Company*, 98 *N.J.* 30, 483 *A.*2d 811 (1984) and *Rahnefeld v. Security Insurance Company of Hartford*, 115 *N.J.* 628, 560 *A.*2d 670 (1989) illustrate the beneficent purposes of the statute. In *Zupo*, we adopted the Appellate Division's expansive interpretation of the No Fault Act's statute of limitations when we held that the statute of limitations does not bar an action brought within a reasonable time after a claim for additional medical expenses is denied when "a carrier has made [PIP] payments ... and is chargeable with knowledge at the time of its last payment that the injury will probably require future treatment." 98 *N.J.* at 31, 483 *A.*2d 811 (quoting *Zupo v. CNA Ins. Co.*, 193 *N.J.Super.* 374, 384, 474 *A.*2d 259 (App.Div.1984)). The insurance carrier in *Zupo* paid PIP benefits to the plaintiff who was injured in an automobile accident and developed osteomyelitis. 193 *N.J.Super.* at 378, 474 *A.*2d 259. Five years after the last payment of benefits the plaintiff suffered a recurrence of the osteomyelitis. *Ibid.* The carrier refused to pay benefits claiming the protection of the statute of limitations. *Ibid.* We observed that the purposes of a statute of limitations are "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend," and "to penalize dilatoriness and serve as a measure of repose." *Zupo, supra*, 98 *N.J.* at 32, 483 *A.*2d 811 (quoting *Ochs v. Federal Ins. Co.*, 90 *N.J.* 108, 112, 447 *A.*2d 163 (1982) (internal citations omitted)). Noting that the recurrence of plaintiff's osteomyelitis was foreseeable by defendant, we found that to allow a plaintiff's claim in those circumstances "poses no threat" to the salutary purposes of a statute of limitations but rather "comports with the intent of the remedial legislation." *Id.* at 33, 483 *A.*2d 811.

Similarly, in *Rahnefeld, supra*, 115 *N.J.* 628, 560 *A.*2d 670, we interpreted the statute of limitations to allow a plaintiff to main-

tain an action for PIP benefits where the "injuries were of such a nature that future treatment was contemplated and reasonably necessary." *Id.* at 636, 560 *A.*2d 670 (quoting *Lind v. Insurance Co. of North America,* 174 *N.J.Super.* 363, 369, 416 *A.*2d 922 (Law Div.1980)). In *Rahnefeld,* the insurance carrier paid PIP benefits for three years after the plaintiff was severely injured in an automobile accident. *Id.* at 631, 560 *A.*2d 670. Five years after the last payment of benefits, the plaintiff required further surgery. *Ibid.* We observed that because the insurer "knew or should have known that recurrence of [the plaintiff's] medical difficulties for which it would be responsible was probable," *id.* at 636, 560 *A.*2d 670 (citation omitted), "allowing recovery under the circumstances would disserve none of the policies underlying statutes of limitations." *Id.* at 634, 560 *A.*2d 670.

B

 Although the first portion of the statute uses the prefatory phrase "shall be commenced" before setting forth the applicable limitations period, the second portion of the statute uses the phrase "may be commenced." Settled principles of statutory construction guide us in our interpretation of the legislature's use of the words "may" and "shall" in the same statutory sentence. Under the "plain meaning" rule of statutory construction, the word "may" ordinarily is permissive and the word "shall" generally is mandatory. *See, e.g., Harvey v. Board of Chosen Freeholders of Essex County,* 30 *N.J.* 381, 391, 153 *A.*2d 10 (1959). Where a statutory provision contains both the words "may" and "shall," it is presumed that the lawmaker intended to distinguish between them, "shall" being construed as mandatory and "may" as permissive. *Bell v. Western Employer's Ins. Co.,* 173 *N.J.Super.* 60, 65, 413 *A.*2d 363 (App.Div.1980); *Sutherland Statutory Construction,* § 57.11 (1992).

C

This Court first addressed the issue of when the Act's statute of limitations is triggered in *Ochs v. Federal Insurance Company,* 90

*N.J.* 108, 447 *A.*2d 163 (1982). There, the plaintiff was injured in a motorcycle accident on November 10, 1974. He first requested PIP benefits on February 18, 1978, more than three years after incurring his injury or first medical expense. His insurer denied benefits and the plaintiff filed suit on May 8, 1978. *Id.* at 110–11, 447 *A.*2d 163. Holding that where an insured has not yet received any PIP benefits the statute of limitations begins to run either from the date of the accident or from the date on which the insured became aware that his injuries were related to the accident, we resolved a conflict between two Appellate Division decisions and found that the plaintiff's claim was time-barred. *Id.* at 113–14, 447 *A.*2d 163. We rejected the Appellate Division's conclusion that only those expenses more than two years old when suit was filed were barred by the statute. *Id.* at 111, 447 *A.*2d 163. However, we expressly declined to address the question of when the statute of limitations begins to run for a claimant who already has received payment of PIP benefits and who seeks further benefits. *Id.* at 112 n. 1, 447 *A.*2d 163.

That question was first considered in *Andrito v. Allstate Insurance Company,* 161 *N.J.Super.* 409, 391 *A.*2d 981 (Dist.Ct.1978). There, the plaintiff was injured in an automobile accident and treated by a dentist the next day, September 22, 1975. Allstate paid for that treatment on December 11, 1975. *Id.* at 410, 391 *A.*2d 981. On February 12, 1976, the plaintiff returned to her dentist who completed the work started five months earlier. *Ibid.* The plaintiff filed suit for payment of those dental expenses on February 9, 1978, more than two years after the last payment of benefits, but within two years of incurring her first uncompensated expense and within four years of the accident. *Id.* at 411, 391 *A.*2d 981. The defendant sought summary judgment contending that the suit was time-barred because it was filed more than two years after the last payment of benefits. *Ibid.* The court concluded that the legislature did not intend that a suit for further benefits that satisfies the requirements of the first portion of the statute also must satisfy the requirements of the second portion of the statute, observing that "[n]o purpose comes to mind" that

would justify restricting plaintiff to the limitations period set forth in the second portion of the statute. *Id.* at 412, 391 *A.*2d 981.

The Appellate Division reached a similar result two years later in *Bell, supra,* 173 *N.J.Super.* 60, 413 *A.*2d 363, when it held that the period within which suit could be commenced was not defined exclusively by the second part of the statute, but that a plaintiff who has been paid PIP benefits could use the limitations period set forth in either portion of the statute. *Id.* at 65, 413 *A.*2d 363. In *Bell,* the plaintiff brought suit for medical expenses incurred in an automobile accident more than two years after the insurer's last payment, but within two years of the plaintiff's first uncompensated expense caused by the accident and within four years of the accident. *Ibid.* Applying settled principles of statutory construction, the Appellate Division concluded that the Legislature's mandate to construe the Act liberally, and its use of both "shall" and "may" within a single sentence, demonstrated that the second portion of the statute was designed to provide an alternative rather than an exclusive limitations period for claimants who previously had received PIP benefits. *Ibid.*

In *Still v. Ohio Casualty Insurance Company,* 189 *N.J.Super.* 231, 459 *A.*2d 1195 (App.Div.1983), the Appellate Division held that the plaintiff was time-barred under the Act where the plaintiff's suit was filed more than four years after the accident and more than two years after the recommencement of treatment. In *Still,* the claimant was injured on December 7, 1975, and received PIP benefits for expenses incurred through April 29, 1976, the last payment being made on September 24, 1976. Notwithstanding a letter from the defendant informing the claimant that no further PIP benefits would be paid to her, she incurred further expenses for accident-related treatment. When the defendant failed to reimburse the claimant, she filed suit on November 28, 1978. Although acknowledging that the second part of the statute is "intended to 'authorize something otherwise barred,'" the *Still* court barred the claim. *Id.* at 234, 459 *A.*2d 1195 (quoting *Bell, supra,* 173 *N.J.Super.* at 65, 413 *A.*2d 363). The court noted that

it was "not necessarily in agreement with all that [was] said in *Bell*" but that the disparate facts of the two cases rendered unnecessary an explanation of those differences. *Ibid.* Unlike the plaintiff in *Bell*, who had sued within four years of the accident and within two years of the recommencement of treatment, the *Still* plaintiff complied with neither limitations period, filing suit more than two years and five months after recommencing treatment and more than two years after the last payment of benefits. *Id.* at 235, 459 *A.*2d 1195.

In a decision inconsistent with both *Andrito* and *Bell*, the Appellate Division in *Sotomayor v. Allstate Insurance Company*, 273 *N.J.Super.* 165, 641 *A.*2d 554 (1994), held that the plaintiff's suit was not filed within the time period prescribed by the second portion of the statute and was thus time-barred. There, the plaintiff was injured in January 1988. The defendant sent the claimant a "cutoff letter" informing her that it would no longer make PIP payments effective December 31, 1988. The last medical bill paid by defendant was on February 23, 1989. The claimant continued to receive medical treatment between May and September, 1990 and occasionally in 1991, but the defendant declined to reimburse her. On September 16, 1991, within two years of the first uncompensated expense and within four years of the accident, the claimant filed suit seeking reimbursement of medical expenses. The Appellate Division, without citing either *Bell* or *Andrito*, held that because the claimant had incurred expenses within two years of the insurer's last payment but had not filed suit within that period, she was not permitted to maintain her suit under the equitable principles established by this Court in *Rahnefeld* and *Zupo*. *Sotomayor*, *supra*, 273 *N.J.Super.* at 171, 641 *A.*2d 554. The court found that "plaintiff was obligated to have filed her action for further benefits within the two year period following the last payment of benefits or, if the claims only arose and were timely submitted at the end of that period, within a reasonable period thereafter." *Ibid.*

In *Washington v. Market Transition Facility*, 295 *N.J.Super.* 368, 685 *A.*2d 57 (1996), the Appellate Division held that the insured's claim was timely and that she was entitled to reimbursement of her medical expenses because her claim satisfied the limitations period set forth in the second part of the statute. *Id.* at 374, 685 *A.*2d 57. The claimant was injured in an automobile accident on January 23, 1993 and immediately received treatment in the emergency room at St. Francis Hospital. The claimant later underwent further outpatient treatment. The defendant partially paid some of the claimant's medical bills through August 9, 1993 but did not pay others, including the emergency treatment bills from St. Francis Hospital. On June 20, 1995, more than two years after her first uncompensated expense but less than two years after the last payment of benefits, the claimant filed suit to recover the unpaid expenses. Defendant moved for summary judgment on statute of limitation grounds, contending that the statute had begun to run on January 23, 1993, the date that the claimant had incurred the bill for her emergency room treatment. The Appellate Division held that the limitations period for filing a suit for further PIP benefits under the second part of the statute "is triggered by the last payment made by the carrier on account of the injuries sustained in the original accident." *Ibid.* The court rejected the insurer's claim that, when later expenses are incurred, the triggering event for the statute of limitations is the earliest uncompensated expense. *Id.* at 369, 685 *A.*2d 57. The court observed that it would be unfair to allow insurers to control the date of the running of the statute of limitations by paying later expenses but failing to make complete payment of the earliest incurred expense. *Id.* at 372, 685 *A.*2d 57.

Our review of those decisions leads us to consideration of a secondary issue: when the limitations period in the first portion of the statute commences for claimants who receive PIP benefits within four years of the accident. The Appellate Division in *Bell, supra,* concluded that the "loss or expense referred to in [the No Fault Act] is the loss or expense for which recovery is sought in the action unless there had been a prior uncompensated expense

attributable to the accident, in which event the loss or expense . . . would be the oldest uncompensated expense." 173 *N.J.Super.* at 63, 413 *A.*2d 363. Similarly, in *Washington, supra,* the Appellate Division explained that "while ordinarily the two-year period of the basic formulation is triggered by the incurring of the first expense, that rule did not fairly apply to the *Bell* plaintiff because, her original expenses having all been paid, '[s]he had no reason to bring any action' before the second round of treatment began." 295 *N.J.Super.* at 373, 685 *A.*2d 57 (quoting *Bell, supra,* 173 *N.J.Super.* at 64, 413 *A.*2d 363)(alteration in original).

In *Aponte–Correa, supra,* the Appellate Division also concluded that, for purposes of triggering the first portion of the statute of limitations with respect to a claimant who receives PIP benefits, an "expense" is the "oldest uncompensated expense." 317 *N.J.Super.* at 604, 722 *A.*2d 955. The court there observed that that was a pragmatic construction of the statute because a plaintiff who already has been paid PIP benefits has no reason to bring suit until compensation has been denied for further medical expenses. *Ibid.*

### III

To recapitulate, in the case before us plaintiff was injured in an automobile accident on November 22, 1992. *Aponte–Correa, supra,* 317 *N.J.Super.* at 599, 722 *A.*2d 955. Her insurer paid her bills for medical services. The last payment was made on December 28, 1993. Plaintiff underwent further treatment on July 10, 1995 for which defendant refused to pay. Plaintiff filed suit on July 24, 1996. Observing that plaintiff's suit was commenced within two years of her first uncompensated expense and within four years after the date of her accident, but more than two years after the last payment of benefits, the Appellate Division held that an action for further benefits is timely if it satisfies either the first portion or the second portion of the statute of limitations. *Id.* at 605, 722 *A.*2d 955. Accordingly, the Appellate Division held that plaintiff could maintain her suit because it was filed within two

years of her first uncompensated expense and within four years of the accident. *Id.* at 606, 722 *A.*2d 955.

Allstate contends that the plain language of the statute compels a finding that a claimant who has previously received PIP benefits must file a claim not later than two years after the last payment of benefits. Plaintiff submits that she may avail herself of either the limitations period in the first or second portion of the statute. As between the two interpretations of the limitations period of the Act advanced by the parties, we are confident that the better interpretation is the one that is less restrictive, more faithful to the underlying purpose of the Act and better reconciles the two portions of the statute. In our view, the Legislature's obvious purpose in enacting the permissive portion of the statute was to permit those who have already received PIP benefits to file suit within two years after the last payment of benefits even if that suit is filed more than four years after the accident occurred. That legislative objective is consistent with the reparations policy underlying the statute and with this Court's decisions in *Zupo* and *Rahnefeld.* If an insured injured in an automobile accident continues regularly to receive PIP benefits during the four years following the accident, the Legislature understandably would have intended that the limitations period for that insured should extend for two years from the date she incurred her first uncompensated expense.

We are also persuaded that the narrow construction urged by Allstate is inconsistent with the reparations policy underlying the Act. That construction would permit an insurer to derive a benefit from a limitations period triggered by its last payment of benefits while that same insurer delays, as Allstate did here, the processing of a later claim. No compelling rationale supports so inequitable an interpretation of the limitations statute, and its application has been criticized as illogical:

> Consider the following hypothetical: a plaintiff involved in an auto accident in January of 1988 accedes to the entreaties of first aid personnel on the scene to be checked out at the local hospital, submits the bill to his PIP carrier and receives the payment check from the PIP carrier in February. In March of 1990, after

suffering steadily worsening back pains, the plaintiff seeks medical attention and discovers that he had injured his back in the auto accident and will require extensive corrective surgery. Applied literally, the holding in Still [189 *N.J.Super.* 231, 459 *A.*2d 1195], would act as a total bar to recovery in this hypothetical case. By contrast, a PIP claimant who had refused to be examined on the day of the accident would be allowed, under *N.J.S.* 39:6A–13.1(a), to file suit seeking reimbursement for the 1990 expenses as late as January of 1992 (up to two years after incurring the expense or four years after the accident, whichever is earlier). There is no rational basis for the distinction between the two cases.

[Cynthia M. Craig and Daniel J. Pomeroy, *New Jersey Insurance Law* § 11:2–2 at 159 (1997).]

Principles of statutory interpretation also support the less restrictive construction of the Act, and demonstrate that the limitations periods in either portion of the statute should be available to injured plaintiffs. The Legislature's use of the words "may" and "shall" in the same sentence indicates its intent that the use of the limitations period in the second portion of the statute is simply an alternative to the primary limitations period in the first portion. *See Harvey, supra,* 30 *N.J.* at 391, 153 *A.*2d 10; *Sutherland, supra,* § 57.11 (commenting that "[w]here both mandatory and directory verbs are used in the same ... sentence of a statute, it is a fair inference that the legislature realized the difference in meaning"). In all likelihood, the Legislature intended that the second part of the statute permit injured motorists who sustain medical treatment beyond the four year period from the date of the accident to recover reimbursement if their last receipt of medical benefits was within two years of the suit.

Because the second portion of the No Fault Act's statute of limitations is merely permissive, we are persuaded that the Appellate Division's interpretation of the first portion, which establishes that the limitations period for claimants who receive PIP benefits during the four years following the accident begins to run from the incurrence of the first uncompensated expense, *Aponte–Correa, supra,* 317 *N.J.Super.* at 604, 722 *A.*2d 955, clearly is the correct construction. Moreover, that analysis is consistent with the interpretation given to the No Fault Acts of the three states, Delaware, Massachusetts, and Florida, on whose laws New Jersey's No Fault Act is fashioned. Commission's Report, *supra,* at

144. See *Harper v. State Farm Mutual Automobile Ins. Co.*, 703 A.2d 136 (Del.1997); *Berkshire Mutual Ins. Co. v. Burbank*, 422 Mass. 659, 664 N.E.2d 1188 (1996); *State Farm Mutual Automobile Ins. Co. v. Lee*, 678 So.2d 818 (Fla.1996).

 We hold that when a claimant has received PIP benefits, an action for further benefits is timely if it is filed either within four years of the accident and two years of the first uncompensated expense, whichever is earlier, or within two years of the last payment of benefits. Accordingly, we affirm the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with this opinion.

VERNIERO, J., dissenting.

The Court concludes that plaintiff's claim for PIP benefits is timely, notwithstanding the fact that it was filed more than two years after the carrier's last payment of benefits. I believe that conclusion is at odds with the plain language of the PIP statute. Even if we assume that the statute is susceptible to more than one interpretation, the construction advanced by the majority runs counter to the rationale expressed in our unanimous opinion in *Ochs v. Federal Ins. Co.*, 90 N.J. 108, 447 A.2d 163 (1982). Therefore, I respectfully dissent.

I.

I begin my analysis with the familiar axiom, "[i]f the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler*, 89 N.J. 220, 226, 445 A.2d 399 (1982). Statutes so written must be enforced in accordance with their literal terms. *Ibid.*

At the time relevant to this dispute, the statute provided:

Every action for the payment of benefits ... shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then

an action for further benefits may be commenced not later than 2 years after the last payment of benefits.

[*N.J.S.A.* 39:6A–13.1a.]

The wording is indeed complex; that alone, however, does not render the statute susceptible to different meanings. When carefully parsed, the statute unambiguously establishes two basic time frames for the filing of actions. First, when the insurer has not paid benefits, a claimant must file the action within two years of suffering the loss or incurring an expense caused by the accident, or not later than four years after the accident, whichever is earlier. In those instances, claims must be filed within two years of the known injury or expense but not later than four years from the date of the accident, the outer limit. Timely claims must be filed within both time frames.

Second, when the insurer has paid some benefits, a claimant must file the action within two years of the insurer's last payment of benefits. For those instances, the Legislature eliminated the two-years-after-expense and four-years-after-accident limitation periods, allowing for claims potentially several years after the first incurred expense or accident, provided a claimant acts no later than two years from the date of the insurer's last payment.

The statute provides that the two-years-after-payment bar is applicable "if benefits have been paid before *then* . . . ." *Ibid.* (emphasis added). In my view, "then" refers back to "whichever is earlier." Those words, in turn, relate to both the two-years-after-expense and four-years-after-accident time frames.

The statute bears repeating: "Every action . . . shall be commenced not later than 2 years after the injured person . . . incurs an expense . . . , or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits." *Ibid.* In other words, when a claimant has been paid benefits within two years of an incurred expense (the fact here), and there has been a gap in payment between periods of treatment (also the fact here),

the claimant must file a claim no later than two years from the date of the insurer's last payment of benefits. Plaintiff's claim falls outside of that window; therefore, it is untimely.

I could subscribe to a contrary interpretation if the statute included the word "uncompensated" as a modifier to "expense" and if it did not contain the words "whichever is earlier" in the context noted above. If the statute were so worded, the two-years-after-payment bar would not be connected to the two-years-after-expense time frame. That, in turn, would permit the interpretation that the two-years-after-payment time frame provides an alternate window within which to file claims. It would also allow for claims to be filed at any time within four years from the date of the accident regardless of the date of the carrier's previous payments.

The statute is not so worded. Our duty is to enforce the statute's precise words and phrases—all of them. "This Court has held that statutory 'construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided.' " *N.J. Carpenters v. Borough of Kenilworth*, 147 *N.J.* 171, 179–80, 685 *A.2d* 1309 (1996) (citations omitted), *cert. denied*, 520 U.S. 1241, 117 *S.Ct.* 1845, 137 *L.Ed.2d* 1048 (1997). The United States Supreme Court has similarly warned: "[J]udges cannot cause a clear text to become ambiguous by ignoring it." *Deal v. United States*, 508 *U.S.* 129, 136, 113 *S.Ct.* 1993, 1998, 124 *L.Ed.2d* 44 (1993).

The Court relies on the statute's distinctive uses of the words "shall" and "may." *Ante* at 325, 744 *A.2d* at 179. However, when viewed in their grammatical context, those words do not accommodate plaintiff's claims. The two-years-after-payment provision is set off by the word "may" because it eliminates the two-years-after-expense and four-years-after-accident windows. In other words, although a claim is otherwise barred because of those other limitation periods, it *may* nonetheless proceed, provided it is filed within two years of the last payment of benefits. In that context, "may" is mandatory, not permissive.

## II.

### A.

With the exception of *Bell v. Western Employer's Ins. Co.*, 173 *N.J.Super.* 60, 413 *A.*2d 363 (App.Div.1980), and this Appellate Division decision, which relied heavily on *Bell*, decisions of this Court and the Appellate Division have applied the plain language of the statute in numerous contexts.

The plaintiff in *Bell* was injured in an automobile accident on June 12, 1975 and her insurer paid PIP benefits until January 7, 1976. *Bell, supra,* 173 *N.J.Super.* at 62, 413 *A.*2d 363. In December 1977, almost two years later, the plaintiff underwent additional treatment for injuries arising out of the same accident. After her insurer denied additional benefits, the plaintiff filed suit on June 13, 1978. *Ibid.*

The trial court ruled that the plaintiff's action was barred because she had filed suit more than two years after the insurer's last payment of benefits. The Appellate Division reversed, holding that the plaintiff's suit "may be commenced within two years after the first unpaid expense has been incurred, provided the action is started within four years after the accident and regardless of the date of the last reimbursement." *Id.* at 65, 413 *A.*2d 363. The court reasoned that a denied or rejected claim represented an "expense" within the meaning of that word in the statute, thereby allowing claimant two years from the oldest uncompensated expense and four years from the date of the accident to file suit. *Id.* at 63, 413 *A.*2d 363.

Two years after *Bell*, we decided *Ochs v. Federal Ins. Co., supra,* 90 *N.J.* 108, 447 *A.*2d 163. In that case, the plaintiff was injured when the motorcycle he was riding collided with an automobile on November 10, 1974. He did not request PIP benefits from the insurer until February 18, 1978, over three years after he first incurred injury or expense. At the time of the accident, "plaintiff's insurance policy excluded coverage of motorcycles and therefore plaintiff was not entitled to receive any PIP

benefits." *Id.* at 110, 447 *A.*2d 163. It was only sometime later that the courts concluded such exclusions were void as against public policy. *Id.* at 115, 447 *A.*2d 163. The implication is that plaintiff delayed action because of the mistaken belief that he was not entitled to benefits under the policy. The insurer denied benefits and the plaintiff filed suit on May 8, 1978. *Id.* at 110–11, 447 *A.*2d 163. The Appellate Division permitted the suit, explaining:

> Under our construction of the statute, it bars recovery only of those expenses which are more than two years old when suit is brought and not those expenses which were incurred within the two-year period prior to suit, provided only that the suit is commenced within the four-year period. We regard this construction as sensibly accommodating both the policy of liberal construction and the policy of repose without doing any violence to the language of the limitations provision.
>
> [177 *N.J.Super.* 19, 24, 424 *A.*2d 849 (App.Div.1980).]

The above rationale by the Appellate Division is similar to the one advanced by the Court today. *Ante* at 331, 744 *A.*2d at 182 ("If an insured injured in an automobile accident continues regularly to receive PIP benefits during the four years following the accident, the Legislature understandably would have intended that the limitations period for that insured should extend for two years from the date she incurred her first uncompensated expense."). However, we previously rejected that rationale in reversing the Appellate Division in *Ochs.* We held that the plaintiff's claim, filed within four years of the accident, was nonetheless barred having been commenced more than two years after claimant incurred expenses. *Ochs, supra,* 90 *N.J.* at 115, 447 *A.*2d 163.

In support of our holding in *Ochs,* we relied on a prior Appellate Division decision, *Danilla v. Leatherby Ins. Co.,* 168 *N.J.Super.* 515, 403 *A.*2d 925 (App.Div.1979). In that case, the trial court interpreted the statute to mean that the two-year period of limitation commenced to run "after the incurrence of each medical expense which was related to the accident, regardless of when the accident occurred or when the first medical expense related thereto was incurred." *Id.* at 517, 403 *A.*2d 925. The Appellate Division disagreed, explaining:

The statute recites that the two-year period begins "after the injured person ... incurs *an* expense ..." (emphasis supplied). There is no further qualification of the word "expense." Thus, it is possible to view that language as did the trial judge in the present case. However, given the purpose and function of statutes of limitation as well as the legislative history of the no-fault insurance legislation, we do not think the Legislature intended such a construction to be ascribed to the statute.

. . . .

We do not deem it likely ... that the Legislature would have chosen to adopt a statute of limitations which would begin to run each time a new medical expense related to the accident was incurred.

[*Id.* at 518–19, 403 *A*.2d 925.]

In accepting that rationale, we stated: "[T]here is no reason to believe the Legislature intended the period of limitations to commence anew with each medical expense. If the Legislature wished to allow an action to be brought at any time during the four-year period, it would not have chosen to foreclose compensation for expenses incurred more than two years before suit." *Ochs, supra,* 90 *N.J.* at 114, 447 *A*.2d 163.

Today, the Court implicitly rejects our previous rationale in *Ochs* by holding, in essence, that a plaintiff may bring suit any time during the four-year-after-accident period irrespective of the date of the carrier's previous payment. By marking plaintiff's "uncompensated" expense as the statute's trigger point, the Court's ruling starts anew the limitations period based solely on a new medical expense—an interpretation rejected by *Ochs*.

Two years after our decision in *Ochs,* the Appellate Division decided *Zupo v. CNA Ins. Co.,* 193 *N.J.Super.* 374, 474 *A*.2d 259 (App.Div.), *aff'd as modified,* 98 *N.J.* 30, 483 *A*.2d 811 (1984). In that case, the injured plaintiff obtained PIP payments from the insurer, within two years of the accident, receiving the last payment in 1975. During that first period of treatment, plaintiff developed an osteomyelitic infection, which required extensive medical attention. In November 1980, the plaintiff suffered a recurrence of the osteomyelitis, requiring a new round of treatment and therapy. Asserting the familiar bar of *N.J.S.A.* 39:6A–13.1a, the insurer rejected the plaintiff's benefit claim for that second period of treatment. *Id.* at 377–78, 474 *A*.2d 259.

The Appellate Division determined that the plaintiff's claim would not be time-barred "if the original medical condition for which the PIP carrier [had] assumed a payment obligation [was] by its nature subject to the probability of recurrence or to the probability of the need for future treatment. . . ." *Id.* at 382, 474 *A.*2d 259. The court reasoned that the insurer was "chargeable at the outset with knowledge of these inherent probabilities" and, therefore, should not be entitled to the protection of the statute. *Id.* at 382–83, 474 *A.*2d 259.

We affirmed the judgment of the Appellate Division. In my view, that disposition did not "illustrate the beneficent purposes of the statute," *ante* at 324, 744 *A.*2d at 178, but rather was based entirely on fact-specific, narrowly-drawn equitable principles. To emphasize that point, we stated: "The principle [adopted in *Zupo* ] embraces a severely limited class of causally related medical conditions, namely, those whose insidious nature is such that their recurrence after an extended period of time is probable." *Zupo, supra,* 98 *N.J.* at 33, 483 *A.*2d 811.

In three other decisions, the Appellate Division applied the "two years after payment" language literally, further isolating *Bell* from the heartland of cases. In *Still v. Ohio Cas. Ins. Co.,* 189 *N.J.Super.* 231, 459 *A.*2d 1195 (App.Div.1983), the court disallowed a claim filed more than two years from the insurer's last payment of benefits, concluding that the statutory language unambiguously required that result. The court distinguished itself from *Bell,* stating "we are not necessarily in agreement with all that is said in *Bell." Id.* at 234, 459 *A.*2d 1195.

Similarly, the court disallowed the plaintiff's claim in *Sotomayor v. Allstate Ins. Co.,* 273 *N.J.Super.* 165, 641 *A.*2d 554 (App.Div.), *certif. denied,* 139 *N.J.* 184, 652 *A.*2d 173 (1994). In that case, the plaintiff sustained injuries from an automobile accident in January 1988. She underwent treatment on a regular basis until the insurer made the last benefit payment on February 23, 1989. After a gap in treatment, the plaintiff returned to her doctor for additional care. She filed suit against the insurer on September

16, 1991, more than two years after the insurer tendered its last payment.

The Appellate Division held that the plaintiff's claim was time barred. It reached that result notwithstanding the fact that plaintiff's doctor had rendered a "permanency opinion" and the trial court had observed that " 'the carrier ... could surely know of a probable reoccurrence' of medical treatment." *Id.* at 168, 641 *A.*2d 554. After reviewing the holding of *Zupo* and other case law, the Appellate Division applied the limitations provision literally, stating "[a]n insured cannot sit back and wait any period of time to bring an action for incurred medical expenses merely because there was a probability of recurrence or the need for related treatment." *Id.* at 171, 641 *A.*2d 554. Notably, the court made no reference to *Bell* in its opinion.

Finally, in *Washington v. Market Transition Facility,* 295 *N.J.Super.* 368, 685 *A.*2d 57 (App.Div.1996), the Appellate Division again considered the question of when to trigger the statute in an instance where there has been voluntary compensation for previous medical expenses. The court stated squarely: "To the extent that question may still be regarded as open, we hold that this limitations period is triggered by the last payment made by the carrier on account of the injuries sustained in the original accident." *Id.* at 374, 685 *A.*2d 57. The court noted candidly, "[i]n retrospect, the rationale of *Bell* may not be free from flaw." *Id.* at 373, 685 *A.*2d 57.

B.

As indicated, the court in *Bell* equated an "expense" with a denied claim, which it recast as an "uncompensated expense," thereby affording the plaintiff two years from the oldest uncompensated claim to file suit. That interpretation, adopted by the Court today, *ante* at 333, 744 *A.*2d at 183, is inconsistent with the language of the statute for two reasons. First, as noted above, the statute does not include the word "uncompensated" as a

modifier to "expense." That reason, standing alone, is sufficient to dispose of the issue.

Second, a claim is a right to payment that accrues *after* a plaintiff incurs an expense. That is why, in my view, the statute refers only to an injured person who *"incurs* an expense." *N.J.S.A.* 39:6A–13.1a (emphasis added). Injured persons incur expenses upon receipt of medical services; only afterwards do they learn whether an insurer will pay or reimburse them for their claims. *See Black's Law Dictionary* 224 (5 th ed.1979) (defining "claim" as a "right to payment" regardless of whether that right is "disputed" or "undisputed"). By drawing distinctions between "compensated" and "uncompensated" expenses, the statute is transformed.

To restate: In *Ochs,* where the insurer had not yet made a payment, we held plaintiff to a strict two-years-after-expense bar, putting no interpretative gloss on "expense." Today, the Court holds that, when an insurer has paid some claims but denied others, plaintiff's action for additional benefits is considered timely because the "uncompensated" expense marks the commencement of the two-year limitations clock. I do not believe the Legislature intended that claimants in the *Ochs* context and those in the present context would be subject to such different treatment. Stated differently, I do not believe that the Legislature intended that the interpretation of "expense" would depend on the action or inaction of an insurer, or that the statute would afford either party an alternate limitations window. I find nothing in the text or history of *N.J.S.A.* 39:6A–13.1a to indicate that the Legislature intended the statute to be that elastic.

C.

The Court relies on case law in Massachusetts, Delaware and Florida as support for its holding. However, none of those jurisdictions has a statute of limitations similar to the one at issue here. Instead, courts there rely on contract principles in determining when a PIP claim becomes timely. The PIP statute in

Massachusetts speaks specifically of "an action in contract," *Mass. Gen. Laws Ann.* ch. 90, § 34M (West 1999), and courts in the other two jurisdictions rely on general statutes of limitation, not specific to PIP matters, when determining the timeliness of claims. *See, e.g., Del.Code Ann.* tit. 10, § 8106 (1998); *Fla. Stat. Ann.* § 95.11 and § 627.736(4)(b) (West 1999). Because of those major distinctions, case law from those jurisdictions should be accorded little or no weight in resolving the present dispute.

## III.

Public policy considerations also support a literal application of the statute. It is reasonable that the Legislature would want to provide a measure of repose in those instances where there has been a gap in medical treatment and corresponding cessation of benefits. This Court suggested as much when we noted in a prior case: "The 'two years after payment' bar would surely apply ... were the injuries [of claimant] such that the carrier could not know of any such probable recurrence." *Rahnefeld v. Security Ins. Co. of Hartford,* 115 *N.J.* 628, 637, 560 *A.*2d 670 (1989).

For the Legislature to conclude that, at some point, a matter must be brought to closure is also reasonable. The Legislature determined that point to be two years from the date of the carrier's last payment to the insured in cases in which there has been a gap in treatment and benefits. The prospect of definite closure "helps speed the litigation of claims and protects the rights of both the insur[er] and the insured." *Ochs, supra,* 90 *N.J.* at 113–14, 447 *A.*2d 163. Although I might be tempted to extend the time frame to accommodate more claims, the statute leaves me no room for that accommodation. Put another way, although I sympathize with plaintiff and might prefer a more generous limitations provision, such a statute must come from the Legislature, not the judiciary. "We are charged with the duty of interpreting statutes, not of legislating." *State v. Fearick,* 69 *N.J.* 32, 38, 350 *A.*2d 227 (1976).

Justice Garibaldi's observation in *Zupo, supra,* is instructive:

> [T]here are few areas in which the legislature has been more active than in no fault insurance. The statute as enacted is the result of much discussion and compromise among various interest groups. I believe that it is eminently logical that the legislature intended to impose a strict two-year-after-payment bar. The legislature is interested in limiting the cost of automobile insurance to the public. It may well have concluded that without such a bar, numerous claims would be filed years after an accident and such open-ended claims would increase the cost of insurance to the public.
>
> [*Zupo, supra,* 98 *N.J.* at 35, 483 *A.*2d 811 (Garibaldi, J., dissenting).]

The Legislature has spoken time and again on the issue of insurance reform. Perhaps it is time for another look; if so, lawmakers, not judges, must drive any effort to revise the statute. Until that happens, we are bound by the statute's literal terms.

I would preserve, in appropriate cases, plaintiffs' ability to demonstrate that their conditions fall within the purview of *Zupo.* I do not depart from that case law. However, nowhere in the argument by plaintiff here was there a demonstration that an equitable exception might apply; thus, that issue is not before us.

In the same vein, I find no indication in the record for the Court's suggestion that the carrier delayed the processing of plaintiff's claim to obtain some strategic advantage or benefit. *Ante* at 331–32, 744 *A.*2d at 182. There is no finding or even mention of that fact in the decisions of the lower courts. Additionally, plaintiff did not raise that issue in her brief or at oral argument. Thus, the suggestion should play no role in the disposition of this appeal.

## IV.

For the reasons noted, I would hold that when an insurer has made some payment of benefits to the insured but then denies further benefits following a gap in treatment, a claimant must file an action for additional benefits within two years of the insurer's last payment of claims. That holding would apply even if the insurer's last payment occurred within four years of the accident. One may reach a contrary result only by disregarding the literal language of the statute and rejecting prior case law.

Accordingly, I would reverse the judgment of the Appellate Division.

Justice GARIBALDI joins in this opinion.

*For affirmance and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN and LONG—4.

*For reversal*—Justices GARIBALDI and VERNIERO—2.