# **RECORD IMPOUNDED**

---

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3870-18T1

IN THE MATTER OF
REGISTRANT J.D-F.

_____

Argued March 4, 2020 – Decided March 18, 2020

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. ML-03-10-0007.

James H. Maynard argued the cause for appellant J.D-F. (Maynard Law Office, LLC, attorneys; James H. Maynard, on the briefs).

Jeffrey L. Weinstein, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent State of New Jersey (Michael J. Williams, Acting Hunterdon County Prosecutor, attorney; Jeffrey L. Weinstein, on the briefs).

PER CURIAM

Appellant-registrant J.D-F. appeals from an April 2, 2019 order denying his petition to terminate his Megan's Law[1] registration requirements. We affirm, substantially for the reasons outlined by Judge Angela F. Borkowski in her comprehensive and cogent written opinion. We add some brief comments to add context to our decision.

Appellant was tried before a jury and convicted on December 19, 2002 of third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a), third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b).[2] The third-degree offenses were committed against a fifteen-year old victim; the fourth-degree offense was committed against a sixteen-year-old victim. Appellant's criminal conduct occurred in 2001, when he was a twenty-year-old manager at a fast food restaurant, in charge of interviewing and hiring teenage employees. His victims were employees of that restaurant.

---

[1] In 1994, the Legislature enacted Megan's Law, requiring, among other things, that a person convicted of certain sex offenses must register with law enforcement authorities and to notify them about changes in employment, address, or internet access. N.J.S.A. 2C:7-2(a, c-d).

[2] Each offense for which appellant was convicted qualifies as a sex offense that compels him to submit to registration and notification requirements. N.J.S.A. 2C:7-2(b)(2).

On May 21, 2003, appellant was sentenced. After the sentencing judge merged the endangering charge with the aggravated criminal sexual contact charge, the judge imposed concurrent three-year terms of probation for the criminal sexual contact and aggravated criminal sexual contact charges. Appellant's sentence was conditioned on sixty days' incarceration and subject to the registration requirements imposed by Megan's Law.[3]

On February 4, 2019, appellant filed a petition to terminate his Megan's Law registration requirements and the obligations related to CSL. Armed with a supporting expert's report, he asserted he remained offense free in the fifteen years following his conviction and posed no threat to the safety of others. The State only opposed appellant's motion to terminate his Megan's Law registration requirements.

On April 2, 2019, Judge Borkowski granted appellant's unopposed request for termination of CSL, finding he committed no crimes in the preceding fifteen years and did not pose a threat to the safety of others. However, Judge Borkowski found appellant ineligible for termination of his Megan's Law

---

[3] On August 18, 2003, in an amended judgment of conviction, appellant was also sentenced to Community Supervision for Life (CSL).

registration requirements because he was convicted of more than one sex offense, as defined under N.J.S.A. 2C:7-2(b).

Pursuant to N.J.S.A. 2C:7-2(f), a registrant may apply "to terminate the registration obligation "upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility . . . and is not likely to pose a threat to the safety of others."  But in 2002, the Legislature amended this statute, adding subsection (g), which provides "[a] person required to register . . . who has been convicted of . . . more than one sex offense . . . is not eligible under subsection (f) of this section to make application to the Superior Court of this State to terminate the registration obligation." N.J.S.A. 2C:7-2(g).

On appeal, appellant argues, as he did before the trial court, that he has not committed more than one sex offense because he was "convicted only one time within a single indictment and [j]udgment of [c]onviction."  Appellant contends N.J.S.A. 2C:7-2(g) must be interpreted to preclude subsection (f) relief only for "individuals with sequential, not simultaneous convictions."  We are not persuaded.

Statutory interpretation is a question of law, which warrants de novo review.  State v. Rodriguez, 238 N.J. 105, 113 (2019).  "We apply common sense

in deducing the meaning of the Legislature's chosen language, drawing inferences based on the statute's structure and composition." In re J.S., 444, N.J. Super. 303, 308 (App. Div. 2016). "The inquiry thus begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning." State v. Hudson, 209 N.J. 513, 529 (2012). "If a plain-language reading of the statute 'leads to a clear and unambiguous result, then our interpretive process is over.'" State v. Hupka, 203 N.J. 222, 232 (2010) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195-96 (2007)). Still, if we discern an ambiguity in the statutory language, we look to extrinsic evidence. Ibid. Sources for such evidence include "the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent." State v. Thomas, 166 N.J. 560, 567 (quoting Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323 (2000)).

Where the Legislature's intent is remedial, a court should construe a statute liberally to achieve its stated purpose. Young v. Schering Corp., 141 N.J. 16, 25 (1995). It is well-established that the registration and notification requirements implicated in this case are remedial, rather than punitive, in nature. Doe v. Poritz, 142 N.J. 1, 12-13 (1995); see also In reA.A., 461 N.J. Super. 385, 394 (App. Div. 2019).

A-3870-18T1

Guided by these principles, we are satisfied Judge Borkowski properly rejected appellant's claim that N.J.S.A. 2C:7-2(g) was intended by the Legislature to bar only those with sequential sex offense convictions or one-time violent sex offenders from terminating their registration requirements.

N.J.S.A. 2C:7-2(g) is limited to a single sentence. The subject of that sentence is a "person . . . not eligible under subsection (f) . . . to terminate the registration obligation." Importantly, the clause at issue, "who has been convicted of . . . more than one sex offense," modifies the subject by describing the category of persons ineligible for subsection (f) relief. Ibid. Critically, N.J.S.A. 2C:7-2(g) does not state that a person with more than one conviction for a sex offense is ineligible for subsection (f) relief. Instead, the plain language of subsection (g) precludes subsection (f) relief for those convicted of "more than one sex offense." Ibid. (emphasis supplied). Accordingly, even though appellant's sex offenses against separate victims on separate dates were captured in a single judgment of conviction, we are satisfied Judge Borkowski properly found his crimes constitute "more than one sex offense" under N.J.S.A. 2C:7-2(g).

Next, appellant argues Judge Borkowski erred by "retroactively" applying N.J.S.A. 2C:7-2(g) when denying his request for relief from lifetime registration

requirements. He references our Supreme Court's recent decision in In re G.H., 240 N.J. 113 (2019) for the proposition that N.J.S.A. 2C:7-2(g) should not apply "retroactively" to Megan's Law offenders whose criminal sexual conduct predated subsection (g)'s effective date of January 8, 2002. This argument is equally unavailing.

Appellant's focus on the timing of his criminal misconduct, rather than the date of his convictions, leads to his misreading of G.H. as well as N.J.S.A. 2C:7-2(g). First, unlike appellant, at the time the defendants in G.H. were convicted, they would have been eligible for relief from lifetime registration pursuant to N.J.S.A. 2C:7-2(f). That is because they were convicted prior to the effective date of subsection (g). Here, as Judge Borkowski properly noted, appellant was convicted well after the passage and effective date of subsection (g). Accordingly, the January 2002 amendment of N.J.S.A. 2C:7-2 to include subsection (g) could not "retroactively" alter the legal consequences that attached to appellant's December 2002 convictions.

Second, contrary to appellant's interpretation, subsection (g) does not preclude subsection (f) relief for those who have committed more than one sex offense; rather, it bars such relief for persons "convicted of . . . more than one sex offense." N.J.S.A. 2C:7-2(g). Similarly, the registration and notification

requirements of Megan's Law attach to a person "convicted . . . of a sex offense," rather than to a person who has committed a sex offense. N.J.S.A. 2C:7-2(a)(1). Accordingly, it was appellant's conviction for multiple sex offenses, rather than the underlying criminal conduct, that disqualified him from subsection (f) relief.

Considering our standard of review, we perceive no basis to disturb Judge Borkowski's thoughtful and well-reasoned April 2, 2019 decision. Defendant's remaining arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION